THE STATE EX REL. NORTH TODD GENTRY, Attorney-General, v. G. A. SULLIVAN ET AL.—8 S. W. (2d) 616.

Court en Banc, June 21, 1928.

*North T. Gentry,* Attorney-General, *Barney Reed* and *Irwin & Bushman* for relator.

*A. W. Curry, L. C. Mayfield, Phil Donnelly* and *Schmook & Sturgis* for respondents.

WALKER, C. J.—This is an original proceeding in *quo warranto* brought by the Attorney-General, as relator, against the respondents to test their authority to hold the offices and exercise the duties of school directors of Common School District No. 15, Laclede County.

The contention of the relator is that District No. 15 has ceased to exist by being merged in and made a part of Consolidated School District No. 2, otherwise known as the Stoutland School District, Camden County, which rendered the offices of school directors of District No. 15 *functus officio*.

The respondents contend that the merger in question was irregular, unauthorized and void and that they are and have been since their election the legally elected directors of said district and as such empowered to perform the functions and discharge the duties of the same.

This matter was referred to a commissioner to take testimony and report on the law and the facts. He complied with this order and recommended that the respondents be ousted from their offices.

I. The Supreme Court's jurisdiction, either in an original proceeding or upon appeal, in cases of the character at bar, is no longer an open question. We have held in proceedings challenging the validity of the organization of a consolidated school district for the purpose of ousting from office the directors of the same, that the case involved "title to any office under the State" and was within the jurisdiction of this court. [Sec. 12, Art. VI, Const. Mo.; State ex inf. Barrett v. Parrish, 307 Mo. 455 and cases p. 457, 270 S. W. 688; State ex inf. Killam v. Con. School Dist., 277 Mo. 458, 209 S. W. 938.]

The rule, as broadly announced in these cases, is impliedly subjected to criticism in State ex rel. Otto v. Hyde, 317 Mo. 714, 296 S. W. 775, in which a proceeding to oust a village trustee was held not to be an "office under the State" within the meaning of the Constitution. The difference, so far as their relation to the State is concerned, between a school director and a village trustee is difficult of determination. Despite their similarity and the discriminating analysis of the rulings discussed in the Otto case, an adherence to the doctrine of *stare decisis* seems most conducive to a satisfactory administration of the law and we overrule the respondents' objection as to this court's jurisdiction.

II. The commissioner in his findings of law holds that the respondents will not be heard to attack the validity of the organization of the consolidated district. This finding, if sustained, will establish an anomalous feature in our procedure. The facts will demonstrate the correctness of our conclusion in this regard. The relator alleges the regularity of the organization of the consolidated district and as a consequence its legal existence. This is an allegation vital to the relator's right to institute this action and the burden of proving it is upon him. He concedes the legal existence of District No. 15 of Laclede County up to the time of the organization of the consolidated district when it is contended that District No. 15, having been merged in the consolidated district, ceased to exist. The sole contention made by the respondents is that the merger, so far as concerns District No. 15, was irregular and unauthorized. To sustain this contention it certainly cannot be gainsaid that they may not offer proof as to the irregularity of the organization of the consolidated district. The cases cited (State ex rel. v. Johnson, 296 S. W. (Mo.) 806, 808, and cases; Burnham v. Rogers, 167 Mo. 17, 66 S. W. 970) by the commissioner to sustain his contention thus made are foreign to the matter at issue. These cases involved collateral attacks upon the legality of the organization of school districts which had been in existence for years. The purpose of these contentions as to the legality of the organization of the districts was to avoid the payment of school taxes. No such issue is presented here. The attack here is direct and not collateral. The relator avers the legality of the existence of the consolidated district; the respondents deny the same. To contend that the respondents should not be permitted to controvert the sole issue, thus clearly made, is at least not consonant with reason, nor in harmony with the recognized rules of interpretation.

III. In passing upon the merits we are limited to a consideration of the matters properly submitted for review, concerning the legality of the merger or inclusion of Common School District No. 15, Laclede County, within the boundaries of Consolidated School District No. 2, otherwise designated as the Stoutland School District, Camden County. Prefatory to a discussion of the legality of that proceeding, mere irregularities will be disregarded. By this we mean such acts of omission or commission in the process of organization which do not run counter to the evidently mandatory requirements of the Constitution or the statute, nor deprive the voters of an opportunity to exercise their will in the formation of the consolidated district. In short, in cases of the character at bar, our rulings have been characterized by liberality of construction. This does not mean that an indifferent or haphazard

compliance with the law will be held.sufficient to sustain an attempt at consolidation, but, that a strict or literal compliance therewith will not be required if it is evident that a failure in that regard has wrought no injury. [State ex inf. Barrett v. Foxworthy, 301 Mo. 376, 256 S. W. 466; State ex inf. McDowell v. Thompson, 260 S. W. (Mo.) 84.]

IV. There is no question raised by the relator as to the legal existence of Common School District No. 15, Laclede County, prior to the organization of Consolidated School District No. 2, Camden County. The sole ground on which it is sought to oust the respondents from office as directors of said common school district, as set forth in the statement of the facts, is that the district ceased to exist upon the formation of the consolidated district. It is urged by respondents in opposition to this contention that the latter was irregularly and illegally incorporated and that the legal existence, as a corporate entity of said District No. 15, was not affected by such attempted consolidation.

V. The first contention of the respondents is that an election for the purpose of securing the will of the voters on the question of a consolidation is governed by the same general laws regulating other elections and that such laws were not observed in conducting the election held in this case. It is contended that the requirements of the Constitution that "all elections by the people shall be by ballot, every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot" (Sec. 3, Art. VIII, Const. Mo.), was not complied with in this election. That no list of the voters was kept, nor were the ballots numbered corresponding to the number of voters on such list. We have held that a school election, as at bar, is an election within the provision of the Constitution. [State ex inf. Atty.-Gen. v. Foxworthy, 301 Mo. 376, 383, 256 S. W. 46; State ex rel. v. Board Pub. Schools, 112 Mo. 213, 20 S. W. 484.] Despite this holding, the trend of our rulings has been to sustain the validity of the organization of consolidated districts, unless it was clearly shown that a failure to comply with the general election laws has resulted in the impairment of individual rights or has proved detrimental to the interests of the people. For example, in State ex rel. Miller v. Consl. Schl. Dist. (Mo.), 1 S. W. (2d) 94, following the rule laid down in State ex inf. v. Foxworthy, 301 Mo. 383, and cases cited, we held that: "It was not contemplated, in the enactment of the statutes providing for the consolidation of school districts, that the formalities required to be observed and the paraphernalia

to be used in general elections shall be required in school district elections. In the latter the reasons for such supervision does not obtain; the number of voters is limited; the questions involved are few, simple and easily understood, and the incentives to fraud, which doubtless prompted the Legislature to enact restrictive statutes governing general elections, do not exist in elections of the character of that at bar."

VI. The concrete contention as to the regularity of the election is that the place where it was to be held was not designated, other than "at Stoutland" and that the notice was void in not being founded on the petition and plat. That, in the absence of a specific designation of the place where the election was to be held, the voters had no knowledge of the same until just before the voting began. The evidence discloses that Stoutland is a small village of not more than three hundred people. Before the voting commenced the county commissioner made a public announcement that the election would be held at the Christian Church. It was accordingly held at that place. No evidence having been adduced that any voter was deprived of his right to vote by reason of the general nature of the notice, no right was impaired or privilege denied, and we are, in all fairness, prompted to overrule this contention. In so doing we are not without a precedent therefor in our own rulings. In State ex inf. Poage v. Higley, 250 S. W. (Mo.) 61, under a state of facts similar to those at bar, we held that where the place at which a consolidation school election was in a small town of not more than three hundred people, a notice of a special meeting to vote on a consolidation which simply designated the town as the place of holding the same was sufficient.

The contention as to the notices not conforming to the petition and the plat, is based on the following facts: On one of the plats an error was made in that the name "Camden" followed the figures 15, indicating that it was School District No. 15 of Camden County, when as a matter of fact it was in Laclede County. This mistake was discovered immediately, and on the forenoon of June 4th the error was corrected by erasing the word "Camden" and writing the name "Laclede" instead.

There was no showing that any one was misled by this error and the correction having been made fifteen days before the day named for holding the election we overrule this contention.

VII. The manner in which the election was conducted is urged as error. A witness for the respondents stated that the polls were

only kept open forty-five minutes and that voters who arrived after the expiration of this period found the polls closed and were deprived of the right to vote. Witnesses for the relator testified that it was about one and a half or two hours from the time the polls opened until they were closed and the directors were elected. The manner in which the election was conducted is thus described: "It was decided, on account of there being no room in town large enough to accommodate the crowd, that the meeting and the election would be held on the lawn at the Christian Church. After the meeting was organized, a line was formed and a ballot box was set on one side of the aisle of the church and the voters passed in at one door of the church and out at the other and as they filed by the judges each voter was given two ballots, one for and the other against consolidation. When the voter reached the box he would drop the ballot he had decided to vote into it and pass on. The polls were closed after all in attendance had voted. After they were closed four voters came up and the polls were opened and they were permitted to vote. When the votes were counted it was found that two hundred and twenty-four votes had been cast for consolidation and one hundred and seventy-one against it." There is a contrariety of testimony in regard to the number of votes cast. One witness for the respondents testified that he counted the voters as they deposited their ballots and that only three hundred and seventy voted. The commissioner, after a review of all the testimony, found that while there was some confusion during the election because of the great number of voters, there was no fraud committed and no one who desired to vote was denied the privilege. Considering the purpose of the election and with that proper regard for the finding of the commissioner to which he is entitled under our practice, no such irregularity in the manner of conducting the election or in determining the result is disclosed as will authorize us to declare it void. It is true that the letter of the Constitution (Sec. 3, Art. VIII) requiring a list of the voters to be kept and their ballots numbered as cast was not observed. This is an irregularity which in a general election or one more comprehensive in its purpose would render the same void. While not countenancing irregularities of this character, we are, in view of the purpose of this election, and its conformity in the main with the other requirements of the law, not inclined to declare it invalid. In the absence of any affirmative proof that any citizen of the consolidated district has suffered wrong or has been deprived of a personal right or his educational advantages curtailed by reason of the manner in which the consolidated district was organized, we are disinclined to rule against the finding of the commissioner, which was to the effect that the consolidated district had been legally organized and as a consequence Common School District No. 15,

Laclede County, upon such organization ceased to exist. From all of which it follows that a judgment of ouster should be rendered against the respondents and it is so ordered. *Ragland, White, Blair, Atwood* and *Gantt, JJ.,* concur; *Blair, J.,* in the result.