STATE EX INF. WALKER, PROSECUTING ATTORNEY, EX REL. JOHN WAGSTER, ET AL., RESPONDENTS, v. CONSOLIDATED SCHOOL DISTRICT 4C DUNKLIN COUNTY, MISSOURI, ET AL., APPELLANTS.—213 SW 2 271.

Springfield Court of Appeals. June 2, 1948.

Motion for Rehearing or to Transfer Denied August 26, 1948.

92

*Bradley & Noble,* for appellants.

*C. A. Powell,* for respondents.

BLAIR, J.—This is an action, brought June 9, 1947, on a petition charging certain irregularities in a school election, called and held March 25, 1947, to determine whether or not Common School District No. 9, of Dunklin County, Missouri, should be annexed to Consolidated School District No. 4C, of Dunklin County, Missouri.

This suit was brought in the Circuit Court of Dunklin County by residents of Common School District No. 9, of Dunklin County, against said Consolidated School District and certain persons, constituting the Board of such Consolidated School District.

A large number of persons, both as plaintiffs and defendants, are named in the pleadings; but we will not undertake to list them. On December 24, 1947, the trial court rendered judgment for plaintiffs. The defendants filed their motion for a new trial, which was overruled on the same day. Thereupon, defendants took an appeal to this Court. Plaintiffs below are respondents here. They will hereafter be referred to as plaintiffs. The defendants below are appellants here; but will be referred to here as defendants. The case is before us on the briefs of the parties, without oral argument.

The petition is very long and will not be set out, any further than an understanding of the issues requires. The only question raised in the case is as to the regularity of the proceedings in the election itself.

The result of the count of the votes, as announced at the meeting, was 26 votes for annexation and 24 votes against annexation, and such annexation was immediately accepted by defendant Consolidated School District No. 4C. Whether or not such annexation proposal, announced as carried at such election, was properly carried presents the only question for our decision.

The petition charged, in substance, that R. L. Pierce and Leona Pierce, husband and wife, Clifford Donica and Kenneth Donica and Jonce Wiley and Clara Wiley, his wife, were unlawfully and fraudulently deprived of their votes at such election.

The record does not show that Kenneth Donica testified; neither did Mrs. Donica. The testimony of Clifford Donica shows that Kenneth Donica was his son. We assume that the Pierces, mentioned in the petition, are the same as the ''Pearces'' whose testimony is in the record.

R. L. Pierce (as Pearce) testified that J. H. Polen called the meeting to order and stated that no one, who had not lived in the School District 90 days, could vote at that meeting. The Pierces thereafter did not attempt to vote, and may even have left the meeting before the voting began.

After one refusal, Polen, who apparently was president of the board, without protest, announced one Robert Waltrip as chairman, and Waltrip named Mrs. Ruth Howard as secretary of the meeting.

The evidence shows that Chairman Waltrip appointed three clerks (as he called them) to count the ballots, after they were cast. Waltrip also testified that, before the meeting commenced, he read Section 10420, R. S. 1939, which fixed the qualifications of voters at such election at 30 days residence in the School District, instead of the 90 days, claimed to have been stated by Polen.

Clifford Donica testified that he was denied a ballot, because he arrived after the ballots were collected, and Wiley said that they would not give him a ballot because he lived in New Madrid County, instead of Dunklin County. Donica, Pierce and the Wileys said that they, and their wives, would have voted against annexation, if they had been permitted to vote.

The Circuit Judge, who saw and heard the witnesses, found that Pierce and wife and Clifford Donica and his wife, the latter not named in the petition, were qualified voters, and were present to vote at such election and were unlawfully and wrongfully denied the right and privilege of voting thereat, and that all of them would have voted against annexation, if they had been permitted to vote. If only two of them had voted against annexation, the proposition would not have carried. The trial judge said nothing about Wiley and his wife, and their qualifications as voters need not be considered by us.

The trial judge declared that the election was void and that the proposition, voted upon at said meeting, did not legally and lawfully carry, and made further orders, which would necessarily follow, if such finding was justified; but said orders need not be considered here. He taxed the costs of the proceeding against defendant Consolidated School District No. 4C of Dunklin County, Missouri.

While Mrs. Clifford Donica is not shown to have been a witness, and was not even named in the petition, it was stipulated that Clifford Donica, and his wife, had such qualifications as to make them qualified voters at such election. Both Clifford Donica and his wife were present, and Clifford Donica said that both he and his

wife would have voted against annexation, if they had been allowed to cast their ballots.

The evidence of Pierce shows that, after Polen said a man had to live in the district 90 days, neither he nor his wife tried to vote. They left the meeting, just as the chairman was chosen, and did not ask for a ballot. There was abundance of evidence to support the finding of the trial court that Donica and wife and Pierce and wife were qualified voters, and did not get to vote. The real question in this case is whether or not they had *the right to vote*, under the circumstances.

We will take the Pierces first: The trial court undoubtedly had the right to find that Polen had said that no one had the right to vote in that election, unless he or she had lived in that School District for 90 days, instead of the 30 days provided by Section 10420, R. S. 1939. But that was not sufficient. Pierce testified that he and his wife left the meeting, just as they were getting ready to vote. No one refused Pierce or his wife a ballot. Neither of them offered to vote at any time.

In an action, against certain election officials, for damages for refusal to allow plaintiff in that case to vote, it was said that the plaintiff must have alleged and proven "that the plaintiff offered to cast his ballot," and cites McGowan v. Gardner, et al., 186 Mo. App. 484, 172 S. W. 408, l. c. 410.

Here the Pierces not only did not offer to vote, but left the meeting, just as the balloting commenced. Their right to vote was not challenged by anyone. They were not refused ballots at any time. They did not even ask for ballots.

Even if the trial court had the right to find that the Pierces would have voted against annexation—a question not necessary for us to decide, under the briefs filed—they never offered to vote, and the statement of Polen was not sufficient to show such refusal or to have their votes counted against annexation. We cannot agree with the trial court in finding otherwise. But, if Clifford Donica and his wife, who was not even mentioned in the petition, had the right to vote, and the trial court was authorized to say that their votes would have been cast against annexation, there would only have been a tie vote and the proposition would not have carried.

Clifford Donica said he and his wife arrived at the meeting late and that they were refused ballots, because the ballots had then been collected and the count, afterwards found to be erroneous, had been started. He said that he and his wife, if permitted to vote on the proposition, would have voted against annexation. We do not think that Clifford Donica and his wife then had the right to cast a ballot, under the circumstances, even if the trial judge had the right to declare how they would have voted, if they had cast ballots.

While Section 10467, R. S. Mo. 1939, cited by appellants, seems to apply only to the organization of town or city school districts, Section 10484, R. S. Mo. 1939, under which the election here discussed was held, applies the method of voting, provided by said Section 10467, to all meetings called under Section 10484. The last mentioned section provides that "the voting at said special school meeting shall be by ballot as provided for in Section 10467."

Clifford Donica, as shown by the transcript, testified that, while the crowd was still there, "They claimed that I was too late that they were already counting up the ballots." He did not get to vote. He left right away. He went to the meeting intending to vote; but his evidence does not show that he or his wife offered to vote, after they got to the meeting.

Clifford Donica must have arrived after the tellers were named, as the ballots were being counted, when he and his wife arrived. Section 10467, R. S. Mo. 1939, provides that the chairman shall appoint two tellers, after "all present have voted."

The testimony of Robert Waltrip, as to Clifford Donica and his wife, was as follows:

"Q. Do you know Clifford Donica?

A. Yes, sir.

Q. Do you recall about when he arrived on the scene?

A. Yes, sir.

Q. When was that?

A. He was late. We had done voted and declared the voting closed.

Q. How did that closing occur?

A. I asked the voters if they were all through and it seemed that they were and I said that the voting was closed and we will now arrange for the count.

"Q. And you went ahead and counted the ballots?

A. Yes, sir.

Q. Did that first count have anything wrong with it?

A. The count was all right but on the black board they made an error and I was correcting that.

Q. Will ask if at the time you made this correction, was that at about the time Donica arrived?

A. Yes, sir—about that time.

Q. And the ballots had been counted?

A. Yes, sir.

Q. And Mrs. Donica was with him at that time?

A. Yes, sir.

Q. Did they ever ask you for a ballot?

A. No, sir.

Q. Did you tell them they couldn't vote?

A. I asked the crowd and someone spoke up and said the polls were closed and I told them it was all over.''

Without regard to whether or not the trial court had the right to determine that the vote of Donica and his wife would have been against annexation, we do not think the, chairman did wrong in closing the election and appointing tellers to count the vote, before the Donicas arrived, and that, thereafter, the Donicas could not properly arrest the voting, previously closed, even if they had asked for ballots and offered to vote. The chairman could not then recall his closing of the vote and the appointment of tellers.

In 46 C. J., Section 292, page 1033, it is said:

''. . . when the judgment or discretion of an executive officer has been completely exercised in the performance of a specific duty, the act performed is beyond his review or recall.''

In an Indiana case, Cress v. State, 152 N. E. 822, cited by defendants, it was said, at local citation, page 826:

''. . . an act once done or a contract entered into, whether by an individual or by a municipal corporation on behalf of the public, cannot be undone and nullified unless the power to undo it has been reserved.''

Plaintiffs say:

''Since Mr. and Mrs. Pierce and Mr. and Mrs. Donica were not permitted to vote and did not have the opportunity to vote the election was fraudulent and the validity of the election can be inquired into by a quo warranto proceedings.''

Plaintiffs have cited State ex rel. Martin et al., v. Stoner, 347 Mo. 242, 146 S. W. (2d) 891, by the Supreme Court in Banc, and other cases. While it was held in that case, that the appropriate remedy was sought to be applied to the alleged misconduct of the members of the School Board, Judge Clark said:

''Elections should be so held as to afford a free and fair expression of the popular will and mandatory statutory requirements must be followed,'' and cases cited in support thereof.

But we fail to find anything in that case, or in State ex rel. Gentry v. Sullivan, et al. 320 Mo. 362, 8 S. W. (2d) 616, that affords any support to the proposition of plaintiffs, quoted above.

In State ex rel. Miller et al. v. Consolidated School District No. 7, of Holt County, Missouri, 1 S. W. (2d) l. c. 95, Judge Walker, with the apparent concurrence of the writer, said:

''It was not contemplated, in the enactment of the statutes providing for the consolidation of school districts, that the formalities required to be observed and the paraphernalia to be used in general elections shall be required in school district elections.''

There is nothing, in any of the cases cited by plaintiffs, which tends in any way to support their contention that either Pierce and his wife or Donica and his wife were unlawfully and fraudulently

98

deprived of their rights to vote, either by Polen or Waltrip, or others. There is no evidence whatever that the election officers were guilty of any fraudulent conduct. Neither the trial court nor this Court has any right to interfere with the will of the voters of Common School District No. 9, Dunklin County, Missouri, as expressed in the only way provided by law.

While appellants seemingly have not briefed the point, and it is probably not properly in this case at all, it seems to us that the trial judge was not authorized, from the evidence in this case, to find how the persons, claiming to have been excluded from voting, would have voted, even if their ballots had been accepted and counted. In 20 C. J. Section 243, page 192, it was said:

"To warrant counting the vote of a qualified voter, deprived of the privilege of voting, it must positively appear how he would have voted had he been permitted to do so and that he was prevented from doing so by an election officer."

We can do no better than quote the language of Pennington v. Hare, in a city election contest case, 60 Minn. 146, as used by Chief Justice Start, in 62 N. W. l. c. 117, as follows:

"It is not necessary to decide this point, for the record presents the simple question, can votes not cast, because of an error of judgment on the part of the election officers, be counted as if cast and returned? We are clearly of the opinion that they cannot be. Where a ballot has been marked by the elector, properly cast, and returned, we have something tangible and certain to deal with, and from it we unerringly read the intention and act of the elector. But where, as in this case, the supposed ballots were never in existence, and we must rely upon the subsequent declarations of the electors as to how they intended to and would have marked and cast their ballots, if they had voted, it would be an uncertain and dangerous experiment to attempt the task of ascertaining and giving effect to their intentions, as ballots actually cast and returned. Uncertain, because it would be simply a matter of speculation; dangerous, because it would give to such electors the power of determining the result of an election, in a close contest. All that it would be necessary for them to do, in such a case, to decide the election, would be to declare that they intended to vote for a particular candidate. It would enable them to sell the office to the candidate offering the highest price for it, because they would not be called upon for their declaration until a contest arose, after the actual ballots had been counted, and the precise effect of their statement known. They could swear falsely as to their past intentions, without fear of punishment, for how would it be possible to disprove their statements as to their intentions with reference to a supposed act, if perchance they had acted? Cooley, Const. Lim. 781."

There was only the testimony of W. L. Pierce and Clifford Donica as to how they and their wives would have voted. This was not sufficient, under any view, to prove how they would have voted, if permitted to do so, or even that they were then entitled to vote, under the circumstances. We cannot sustain the judgment of the trial court, even upon the assignments of error made in the briefs.

The judgment is reversed and the cause remanded to the Circuit Court, with directions to that court to set aside its order of November 24, 1947, and to find the issues for defendants.

DAVID E. BLAIR, Judge.

*Vandeventer, J.*, concurs.