THE STATE OF MISSOURI AT THE INFORMATION OF HENRY WALKER, Prosecuting Attorney of Dunklin County, Missouri, at the Relation of JOHN WAGSTER, VERGLE WAGSTER, JONCE WILEY, CORA WILEY, J. B. THOMPSON, CLEOPIA THOMPSON, B. A. SHELTON, CLARA SHELTON, JOE McMILLIAN, FLORA McMILLIAN, J. W. EVANS, MRS. J. W. EVANS, J. W. EVANS, JR., E. L. HIGHFILL, MRS. E. L. HIGHFILL, H. E. NATION, E. B. WARREN, RENA WARREN, R. L. PIERCE, LEONE PIERCE, J. B. GRAY, J. A. GRAY, STELLA GRAY, CLIFFORD DONICA, BEULAH DONICA, ELBERT WILLIAMS, RACHAEL WILLIAMS, O. W. KIMBROUGH, MELBA KIMBROUGH, ROSS McCURTER, ALICE McCURTER, V. J. LEMINGS, BONNIE LEMINGS, WILL ALLEN, LILLIE ALLEN, PETE HAULTZHOUSER, MAUDIE HAULTZHOUSER, J. B. BOYD, JOHN M. CLARY, BERTHA CLARY, JOHNNY L. SHELTON, L. R. FORBIS, LOIE FORBIS, W. H. STEWART, IDA STEWART, ROBERT WALTRIP, J. L. ADKINS, I. B. MORRIS, JESSIE HOOSER, WALTER HOOSER, MARY L. MARKLE, ROY M. STOKES, MAY W. STOKES, INEZ COX, MARTHA J. COHEN, BIRDIE I. RAYBURN, and LAURA W. BAKER, Respondents, v. CONSOLIDATED SCHOOL DISTRICT No. 4C of Dunklin County, Missouri, and RYMOND McCORD, C. B. JAMES, PAUL BLAYLOCK, J. H. POLEN, RILEY ANDERS and JEWELL HIGGINBOTHAM, Members of the Board of Education of Consolidated School District No. 4C of Dunklin County, Missouri, Appellants.—No. 41222.—217 S. W. (2d) 500.

Court en Banc, February 14, 1949.

*Bradley & Noble, John W. Noble, Lawrence L. Bradley* for appellants.

*C. A. Powell* for respondents.

[501] TIPTON, J.—This is an action in quo warranto filed in the circuit court of Dunklin County to test the validity of the annexation of Common School District No. 9 to the Clarkton Consolidated School District No. 4C in Dunklin County. The trial court held that four qualified voters of Common School District No. 9 were wrongfully denied their right to vote and that therefore the proposition for the annexation did not receive a carrying vote. The Springfield Court of Appeals held that these voters had not been wrongfully deprived of their right to vote and reversed the judgment of the trial court.

The essential facts are that on March 25, 1947, a special election was held in Common School District No. 9 on the proposition of annexing its territory to Clarkton Consolidated School District No. 4C. When the voters had assembled, Ted Polen, the then president of the board of Common School District No. 9 started the meeting by telling those assembled the purpose of the meeting and the question to be voted upon. He read a part of a statute and then told the people assembled the remaining part of the statute dealt with the qualification of voters and said that a person to be qualified to vote must have lived in the district for ninety days. R. L. Pierce and his wife, Leone Pierce, then made a remark to the effect that "that lets us out" and they left the meeting without offering to vote. After making these remarks Polen asked Robert Waltrip to serve as chairman. There was no objection to Waltrip's serving by any person present and he consented to do so.

When the meeting was organized there was evidence that Waltrip read Section 10420, R. S. Mo., 1939, dealing with the qualification of voters. On the other hand, there was some evidence that he only undertook to state what the section contained. He then askd some ladies present to pass out the ballots. When the ballots had been distributed and the voters had marked them, the voters placed them in the ballot box. When all people present had voted the chairman declared the voting closed and appointed tellers who proceeded to count the ballots. While the ballots were being counted Clifford Donica and his wife came into the room where the meeting was be-

ing held and asked for ballots but were told by the chairman that they were too late, that the voting was closed, and refused to allow them to vote. The result of the vote as announced by the chairman was 26 votes for the annexation and 24 votes against.

[502] Were the four people, Mr. and Mrs. Pierce, and Mr. and Mrs. Donica, wrongfully deprived of their right to vote? That is the only question before us.

■ Section 10420, R. S. Mo., 1939, which is applicable to common schools, says that "a qualified voter within the meaning of this chapter shall be any person who, under the general laws of this state, would be allowed to vote in the county for state and county officers, and who shall have resided in the district thirty days next preceding the annual or special meeting *at which he offers to vote.*" (Italics ours.)

The record conclusively shows that the Pierces had moved into the district more than thirty days before this special school election, but had not lived there ninety days. It also shows that the Pierces never offered to vote, nor were they refused the right to vote by any officer at the meeting, but left the meeting before the voting started. Under such circumstances we hold that the Pierces were not wrongfully deprived of their right to vote. McGowan v. Gardner, 186 Mo. App. 484, 172 S. W. 408. There was no proof of any fraud as there was in the case of State at Inf. McKittrick ex rel. Martin v. Stoner, 347 Mo. 242, 146 S. W. 2d 891. In that case the school election was held at 6 A. M. in a remote school house and no notices were posted in the most populous parts of the district. Under those circumstances it was evident that those sponsoring the meeting did not desire a full and fair expression of all the voters of the district. In the case at bar, the Pierces were presumed to know the law and the trial court erred in holding that they were fraudulently deprived of their votes.

■ The special election in question was held under the provisions of Section 10484, R. S. Mo., 1939, which provides that "the voting at said special school meeting shall be by ballot, as provided for in section 10467." Section 10467 provides that "when all present shall have voted, the chairman shall appoint two tellers, who shall call each ballot aloud and the secretary shall keep a tally and report to the chairman, who shall announce the result." We think that when all present had voted and the tellers were appointed that the above section contemplated the voting should be brought to an end.

We agree with respondents that we have ruled this section to be directory and not mandatory. State ex rel. Miller v. Consolidated School District No. 7, 318 Mo. 865, 1 S. W. 2d 94; State ex rel. Gentry v. Sullivan, 320 Mo. 362, 8 S. W. 2d 616. Even though the section is directory, the Donicas were not wrongfully deprived of their right to vote because they were not present until after all present had voted and the tellers had called the vote, although the result of the bal-

loting had not been announced. In other words, the statute was followed. Directory provisions of a law are not intended by the legislature to be disregarded. 50 Am. Jur. 43.

· If the chairman had reopened the voting and permitted the Donicas to vote, then we would have a different question before us. Under such circumstances we would have the question of whether such irregularity would be sufficient to invalidate the election where the statute is directory.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded to the circuit court, with directions to that court to set aside its order of November 24, 1947, and to find the issues for respondents. It is so ordered. All concur except *Ellison, J.*, who dissents in separate opinion filed.

■ ELLISON, J. (dissenting).—I respectfully dissent from the holding of the principal opinion sustaining the action of the Chairman of the special school election meeting in denying Mr. and Mrs. Donica the right to vote on the annexation proposition. They were qualified voters but had arrived a few minutes late, after the actual balloting but while the ballots were being counted. The statute, Sec. 10484, R. S. 1939, Mo., R. S. A. does not prescribe the hours within such meetings shall be held unless by its reference to Sec. 10418. And the **[503]** latter merely provides annual school meetings shall commence at 2 o'clock p. m., but says nothing about when they shall close.

Sec. 10484 further refers to Sec. 10467 as governing the voting procedure at the meeting, and the latter section provides: "And each person desiring to vote shall advance to the front of the chairman and deposit his ballot in a box to be used for that purpose. When *all present shall have voted*,"—the chairman appoints two tellers who count the votes aloud. A tally is kept and the result of the voting announced. There is nothing in the statute about declaring the balloting closed before that, and Mr. and Mrs. Donica were "present" before all the ballots had been counted and the result announced.

The meeting was rather informal, with only fifty country people voting. Doubtless they were acquainted with each other, and their children, convenience and taxes were affected. As the principal opinion states, this court en banc has held that these statutes, affecting people in such rural environments, are for the most part directory and not mandatory. State ex rel. Miller v. Consol. School Dist. No. 7, 318 Mo. 865, 869(4), 1 SW. (2d) 94, 95(4). The provision of Sec. 10484 violated in that instance was the one requiring the voters to file up singly to the ballot box in front of the chairman and deposit their ballot therein. It was contended a violation of that provision had resulted in the stuffing of the ballot box, but this court ruled the mere violation of the statute did not invalidate the election.

The same doctrine was announced in State ex rel. Atty. Gen. v. Sullivan, 320 Mo. 362, 368(3), 8 SW. (2d) 616, 618(4), where it was

said: "The trend of our rulings has been to sustain the validity of the organization of consolidated districts, unless it was clearly shown that a failure to comply with the general election laws has resulted in the impairment of *individual* rights or has proved detrimental to the interests of the people . . ." [italics mine]. Further, 59 C. J.; p. 1079, §634 provides: "So a statute requiring a public body, merely for the orderly transaction of business, to fix the time for the performance of certain acts which may as effectually be done at any other time is usually regarded as directory."

The theory of the principal opinion appears to be that if the school election authorities deviate from a directory statute it will not invalidate the election, but if they enforce it rigorously the voter cannot complain, notwithstanding he is denied the right to vote. In other words, the discretion is lodged exclusively in the authorities. In my view that is not the law. The principal opinion quotes substantially (without quotation marks) a part of a sentence from 50 Am. Jur., p. 43, §20: "directory provisions (of a law) are not intended by the legislature to be disregarded." But in that text the same sentence goes on to say: "and where the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine such consequences." That is to say, the discretion is in the *courts*, and not exclusively in the officers. And this necessarily implies the voter can tender the issue.

The vice in a contrary view is apparent. A school election officer could treat a statute as director when it operated in favor of voters entertaining his own view, and as mandatory when invoked against adversaries. There is a case in point, in my opinion. State ex rel. Ellis v. Brown, 326 Mo. 627, 633(2), 33 SW. (2d) 104, 107(8), a decision by the court en banc, which dealt with the registration statute in Kansas City which required an absent voter to file his application to register not later than the fourteenth day preceding a primary election, the election commissioners to sit on three days of the week preceding the election to hear such applications, and the applicant to appear before the board on some one of those three days. A particular voter in that case was absent from the city and failed to do so. Thereafter when he did appear the board of election commissioners refused to entertain his application because he was not within the statutory time limit. This court held the statute, Laws Mo. 1921 [2 Ex. Sess.] p. 19, Sec's 30, 33, [504] was not mandatory but directory and that the voter was entitled to be registered. In that connection the opinion said:

"The statute does not prescribe the consequences of the failure of an applicant either to file his application not later than the fourteenth day preceding the election or to appear before the election commissioners on Monday, Tuesday or Wednesday of the first week prior to the election; it does not declare that a failure of an applicant in

either of the two respects mentioned shall preclude his right to be registered. Now every person having the qualifications prescribed by the Constitution has the right to vote, and the sole objective of the statute is to determine the individuals who possess those qualifications and make a public record thereof. Such record when made tends to prevent repeating, colonization and other fraudulent abuses of the franchise. The making of the record and the truthfulness of its recitals are the essence of the thing the statute requires to be done and not the time in which it is to be done . . . .''

This decision has since been recognized three times as authority under its facts. Morris v. Karr, 342 Mo. 179, 182(2), 114 SW. (2d) 962, 964(2); State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 709(5), 123 SW. (2d) 20, 23(6); McIntosh v. Wiggins, 356 Mo. 926, 931(3), 204 SW. (2d) 770, 773(7).

In the Ellis case just reviewed above, a *statute* fixed the time when the voter should appear before the board of election commissioners to register as a voter in the primary election. In this case the statute does not fix the time, other than to say that when *all the voters present* shall have voted the votes shall be counted and recorded, and the result of the vote announced. The statute does *not* say the chairman of the meeting may declare the voting closed before that. Undoubtedly the chairman would have the power to declare the election ended after every voter present had voted and the result of the election was ascertained. But in fairness it seems that could not be done in the circumstances of this case. The vote was close: 26 for annexation; 24 against it. The votes of Mr. and Mrs. Donica might have resulted in a tie vote; or they might have increased the majority from 2 to 4. But they were entitled to vote. I think the judgment of the circuit court should be affirmed as to voters Mr. and Mrs. Donica.