Aniceto H. **Mundo,** Petitioner,

v.

Commonwealth **Superior Court**
and Board of Elections,
Respondents,

Marja Lee Taitano,
Real Party in Interest.

Opinion and Order

Original Action No. 96-001

June 7, 1996

Counsel for petitioner: Paul A. Lawlor, Saipan.

Counsel for respondent Board of Elections: William J. Ohle, Assistant Attorney General, Saipan.

Counsel for real party in interest: Bruce L. Jorgenson, pro hac vice, Randall T. Fennell, Saipan.

BEFORE: TAYLOR, Chief Justice, VILLA-GO-MEZ, Justice, and MACK, Special Judge.

TAYLOR, Chief Justice:

This original proceeding, filed on May 1, 1996, arises from an election contest over a seat on the Board of Education from Rota District 6. The petitioner, Aniceto H. Mundo, was originally declared the winner of that post in the election held November 4, 1995, by a margin of three votes. The real party in interest, Marja Lee Taitano, received the next highest vote tally. She filed an election contest action before the respondent Superior Court claiming that the respondent Board of Elections ("BOE") had committed errors in the conduct of the election resulting in certain voters being improperly prevented from casting their ballots. The court heard the contest action on January 18 and 19, 1996. On April 11, 1996, it issued a decision[1] mandating that four additional voters be allowed to cast their ballots and that BOE recertify the results once those four votes were added to the total. The four voters cast their ballots in favor of Ms. Taitano, giving her a one-vote margin of victory.

Mr. Mundo filed this petition on May 1, 1996, seeking a writ "prohibiting Respondent Superior Court from requiring its order of April 11, 1996[,] to be complied with as to requiring the Board of Elections to recertify the result [of the election], and prohibiting Respondent Board of Elections from complying with that order." Petition for Writ of Prohibition at 3. Upon Mr. Mundo's further motion, this Court stayed the April 11 order requiring BOE to recertify the new election result no later than May 10, 1996, pending our review.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

This petition raises three issues for our consideration:

I. Whether this Court may assume jurisdiction to issue a writ of prohibition to review an order of the Superior Court which is alleged to be outside its statutory authority when the election contest statute, 1 CMC § 6425(c), mandates that the Superior Court's judgment "shall be final and unappealable";

II. Whether the Superior Court lost jurisdiction over this election contest when it did not issue findings and conclusions within three days of receiving submission of the evidence, as mandated by 1 CMC § 6425(c); and

III. Whether the remedy mandated by the April 11 order is outside the authority conferred by the election contest statute, 1 CMC § 6421 et seq.

■ Mr. Mundo's petition invokes this Court's supervisory jurisdiction. 1 CMC § 3104. Whether to assume such jurisdiction is a matter within our discretion, based on the facts presented. *See Mafnas v. Hefner*, 1 N.M.I. 22, 31 (1989) (declining supervisory jurisdiction); *Planned Parenthood v. Operation Rescue*, 550 N.E.2d 1361, 1365 (Mass. 1990).

■ If the Court determines that it should exercise supervisory jurisdiction, the writ of prohibition is nevertheless reserved for extraordinary situations. Writs may be issued only to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."

---

[1] *Taitano v. Mundo*, Civ. No. 95-1082 (N.M.I. Super. Ct. Apr. 11, 1996) (Order).

*Taimanao v. Superior Ct.*, 4 N.M.I. 94, 97 (1994) (*quoting Tenorio v. Superior Ct.*, 1 N.M.I. 1, 7 (1989). Five factors govern the issuance of writs:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the lower court's order is clearly erroneous as a matter of law; (4) whether the lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and (5) whether the lower court's order raises new and important problems or issues of law of first impression.

*Id.*

## ANALYSIS

This Court has twice before assumed supervisory jurisdiction over election contests. *See Taimanao*, 4 N.M.I. at 96; *Board of Elections v. Superior Ct.*, 4 N.M.I. 111, 112 (1994). After careful consideration of several countervailing factors presented in this case, we decline to do so here.

### I.   Issue Not Presented Below

Our first concern is that supervisory jurisdiction is not typically exercised where the trial court has not had an opportunity to rule on the issue presented. *Mafnas*, 1 N.M.I. at 32 (declining supervisory jurisdiction where Superior Court had not been afforded opportunity to entertain issue presented). Here, there is no evidence that Mr. Mundo directed the trial court's attention to the matters he brings before us in his petition. Indeed, as to the claim that the trial court delayed beyond the statutory time limitation in rendering its decision, there is some indication in the record that this alleged error may have been invited. On January 23, the Superior Court issued a post-hearing procedural order which stated:

> *The parties also requested that they be permitted to make their closing arguments in writing, and the Court consented.* Therefore, the plaintiff shall be given until February 5, 1996, to file her closing argument, Defendants shall have until February 12, 1996, to file their closing and any response to Plaintiff's argument, and plaintiff

will then have until February 15, 1996, to file any rebuttal argument.

*Taitano v. Mundo*, Civ. No. 95-1082 (N.M.I. Super. Ct. Jan. 23, 1996) (Procedural Order at 2) (emphasis added). While this order does not state which party requested a lengthy post-hearing briefing schedule, neither does it indicate that any party objected. In the context of such a failure to object, it is inconsistent (at best) for Mr. Mundo or BOE now to demand strict compliance with the statute requiring the court to issue its findings "after hearing the evidence and within three days after the submission thereof." 1 CMC § 6425(c).[2]

■ Similarly, there is no indication that Mr. Mundo or BOE presented to the Superior Court the arguments they bring before us now regarding the remedy ordered by the court. A review of the briefs on file at the Superior Court does not indicate that any party discussed the proper remedy in the event that Ms. Taitano prevailed in her challenge. Rather, it appears that the court confronted the question for the first time in its April 11 order ("the Court is now faced with the difficult task of fashioning a remedy which is appropriate to the voters and the plaintiff"). *Taimanao, supra* (Apr. 11, 1996) ("April 11 order"). Nor does the record at the Superior Court indicate that any party moved for reconsideration of the April 11 order based on the authorities presented to us now. We will not issue extraordinary writs to intervene in matters not squarely presented to and ruled on by the trial court. *Cf. Western Food Plan, Inc. v. District Court*, 598 P.2d 1038, 1042 (Colo. 1979) (en banc) (declining to issue prohibitory writ where trial court had had no opportunity to rule on issue presented).

---

[2] It is possible to read the phrase "after submission thereof" in 1 CMC §6425(c) to mean after the conclusion of any post-hearing briefing. Under this interpretation, the three-day period would not have begun to run until after February 15, 1996, the deadline set by the court for submission of the briefs. However, this interpretation is not consistent with the overriding intent of the legislature to "resolve election contests in an expedited fashion." *Taimanao v. Superior Ct.*, 4 N.M.I. 94, 98 (1994). Nor is this the reading of the statute BOE offers in support of the petition for a writ of prohibition. In its answer to the petition, BOE states: "[A]fter hearing on the merits, while under a statutory obligation to issue its order in three days, 1 CMC § 6425(c), the Superior Court waited *almost three months* to issue its order." Respondent's Answer at 10 (emphasis added). April 11 is less than two months after the trial court's February 15 deadline for post-hearing briefs. Thus, BOE's statement makes clear that it now insists that the court should have rendered its decision by January 22, 1996, a position that, by all indications, it did not take below.

■ Of course, there is ordinarily no duty to move for reconsideration at the trial court before filing an appeal to this Court. However, this case comes before us under the expedited timetable and special statutory framework of an election contest, which mandates that the Superior Court's judgment is "final and unappealable." 1 CMC § 6425(c). This statute plainly means that, absent exceptional circumstances as discussed below, the Superior Court should have the last word on the matter. In this context, where the trial court's ruling raises issues never briefed by the parties, a motion to reconsider is a procedural prerequisite to an application for the exercise of this Court's supervisory jurisdiction.

## II. Superior Court Judgment not Subject to Appeal

■ Even looking beyond the parties' failure to call the trial court's attention to the issues presented here, other considerations weigh against our assumption of jurisdiction. As noted above, the election contest statute provides that the judgment of the trial court in an election contest is "final and unappealable." 1 CMC § 6425(c). This provision is based on strong public policy considerations that election contests should not be permitted to drag on indefinitely, disrupting the ability of elected officials to discharge their duties during significant portions of their terms. Comparable provisions in the election laws of other jurisdictions have been strictly enforced. See Kreidler v. Eikenberry, 766 P.2d 438, 441-42 (Wash. 1989) (holding that interest in finality of elections requires strict construction of statute barring appeal of trial court decision); Perdue v. Sapp, 233 P.2d 973, 974 (Okla. 1951) (dismissing appeal as "a nullity where contest statute provided that decision of trial court "shall be final"); Hiett v. Brier, 586 P.2d 55, 58 (Kan. Ct. App. 1978) (en banc).

■ In such jurisdictions, parties may still seek discretionary review of election contests by petitioning for an extraordinary writ, but the scope of review is sharply limited. See Hiett, supra (limiting writ review of election contest results to instances where decision below was induced by bad faith or was the result of "arbitrary acts showing wrongful conduct amounting to fraud, corruption or oppression"); Kreidler, 766 P.2d at 443 (restricting review of trial court's orders on ballot title challenges to instances of "wilful and unreasoning action, without consideration and in disregard of facts or circumstances"); State ex rel. Halpin v. Hamilton County Bd. of Elections, 126 N.E.2d 145, 146 (Mass. 1952), rev'd on other grounds, 118 N.E.2d 840 (confining review of election contest decisions to instances where board

"flagrantly misinterpreted the statute, or clearly disregarded an applicable legal provision"). We find these authorities persuasive and hold that writ review of election contests is limited to instances of flagrant misinterpretations of binding law, arbitrary and capricious findings of fact, or wrongful conduct.

## III. Nature of Alleged Errors

The final step in our jurisdictional analysis, therefore, is to determine whether the trial court's errors, as alleged in the petition, constitute flagrant misinterpretations of binding law, arbitrary and capricious findings of fact, or wrongful conduct. If not, the overriding policy interest in speedy determinations of election contests mandates that we decline jurisdiction and let the judgment of the Superior Court stand.

■ A. Post-Hearing Delay. One CMC § 6425(c) provides in part that "[a]fter hearing the evidence and within three days of the submission thereof, the court shall issue its findings of fact and conclusions of law, and immediately thereafter announce judgment in the case, either confirming, or reversing the result of the election." We made clear in Taimanao that, in election contests, "time limits are not meant to restrict the jurisdiction of the court." Taimanao, 4 N.M.I. at 97. There is no dispute here that the trial court properly acquired jurisdiction over this matter. "[O]nce a valid claim has been stated under a contest statute and a court has properly assumed jurisdiction, procedural defects in the adjudication of the contest will not strip a court of the jurisdiction thus assumed." Mendiola v. Taimanao, Civ. Nos. 94-0024, 94-0025 & 94-0026 (consol.) (N.M.I. Super. Ct. Feb. 9, 1994) (Decision and Order on Motion to Reject Pleadings and Motion to Dismiss at 5) (citing O'Dowd v. Superior Ct., 111 P. 751, 753 (Cal. 1910)); Taimanao, 4 N.M.I. at 97-98. In light of these authorities, the timing of the April 11 order does not constitute a flagrant misapplication of the statute warranting our assumption of jurisdiction.

■ B. The Remedy Ordered by the Superior Court. On its face, the election contest statute limits the trial court to an order "either confirming, or reversing the result of the election." 1 CMC § 6425(c). Statutes governing election contests are to be strictly construed. See Mendiola, supra (citing Seman v. Aldan, 2 CR 619 (N.M.I. Trial Ct. 1986), aff'd, 3 CR 152 (D.N.M.I. App. Div. 1987)). Employing a strict construction here, it appears that the trial court, in adjudicating an election contest, may employ only two possible remedies: to confirm the election of the original winner, or to reverse the result and declare another candidate the winner. The

statute does not expressly provide for allowing disenfranchised voters to add their votes into the tally at a later date.

█ In the April 11 order, the Superior Court mandated the following remedy:

1. Danny C. Charfauros, John A. Atalig, Gina Marie T. Aldan and Annabelle Atalig shall be given the opportunity to cast their votes for the Rota District No. 6 Board of Education representative within ten days of the date of this order;

2. The Board shall, within twenty days of the date that any such ballots are cast, retabulate the election result and recertify the result for the Rota District No. 6 Board of Education representative.

April 11 order at 10-11. Following a strict construction of 1 CMC § 6425(c), this remedy is beyond the scope of the jurisdiction expressly conferred by the election contest statute.

However, under a somewhat broader construction of the statute, the procedure mandated by the Superior Court could be considered a method of "reversing the result of the election." Indeed, Ms. Taitano's original election contest complaint alleges that the four voters at issue, "on information and belief, would not have voted for Mundo." Verified Complaint at 2, *Taimanao, supra* (filed Nov. 24, 1995). While no transcript of the trial court hearings is before us, it appears that these allegations were proven up at trial, and that the court expected the remedy mandated in the April 11 order actually to cause a reversal of the election result. Thus, while the trial court erred in ordering a remedy not expressly called for in the statute, the error arises from a plausible reading of the statute and therefore cannot be deemed a flagrant misinterpretation of binding law.

In its pleading in support of the writ, BOE also objects to the trial court's choice of remedy on the grounds that it is contrary to the common law rules governing election contests. BOE Answer at 8-9. BOE cites cases holding that it is improper to correct an election result by asking a small number of voters to vote after the impact of their votes is known. *See Pennington v. Hare*, 62 N.W. 116, 117 (Minn. 1895) (asking a few voters to decide election result by casting votes after margin of victory is known is "an uncertain and dangerous experiment"); *Martin v. McGarr*, 117 P. 323, 327-28 (Okla. 1910). The common law rule of *Pennington* has also been adopted in the following jurisdictions: Arkansas (*Rubens v. Hodges*, 837 S.W. 2d 465, 468 (Ark. 1992)), Arizona (*Babnew v. Linneman*, 740 P.2d 511, 514 (Ariz.

Ct. App. 1987)); Massachusetts (*McCavitt v. Registrars of Voters of Brockton*, 434 N.E.2d 620, 630-31 (Mass. 1982)); Missouri (*Missouri ex rel. Wagster v. Consolidated Sch. Dist.*, 213 S.W. 2d 271, 275 (Mo. Ct. App. 1948), aff'd, 217 S.W. 500 (Mo. 1949) (en banc)); South Dakota (*Pawlowski v. Thompson*, 264 N.W. 723, 724 (S.D. 1936)); Georgia (*Brisco v. Between Consol. Sch. Dist.*, 156 S.E. 654, 656 (Ga. 1931)); Iowa (*Coggeshall v. City of De Moines*, 117 N.W. 309, 314 (Iowa 1908)); and Wisconsin (*Wold v. Hanson*, 58 N.W. 237, 237-38 (Wis. 1894)). This rule is rooted in a policy concern that asking a few voters to cast their ballots after the fact exposes them to pressure, invites corruption, and deprives the electors in question of the secrecy of their ballots.

█ However, the courts of the Commonwealth are bound by the common law of the fifty states only "in the absence of written law or local customary law to the contrary." 7 CMC § 3401. Because the Commonwealth has applicable written law in the form of the election contest statute, these cases are not binding in this jurisdiction. Whether they would constitute persuasive authority in a proceeding which is less restricted in scope than the limited review we conduct here, we express no opinion. Nor will we express an opinion on the policy concerns raised by these cases and echoed in BOE's brief. Such concerns are best addressed by seeking to amend the election contest statute itself, by promulgating regulations and procedures aimed at avoiding future recurrence of the situation presented here, or simply by bringing all relevant authorities to the attention of the trial court prior to its issuance of a final judgment.

In sum, the errors complained of in the petition do not rise to the level of flagrant misinterpretations of binding law. Therefore, they do not satisfy the narrow criteria for writ review of election contests, and we decline to exercise jurisdiction to correct them.

## CONCLUSION

For the reasons stated above, we decline supervisory jurisdiction over this matter, and we hereby **DENY** Mr. Mundo's petition for a writ of prohibition.