ST. PAUL. J.
The-appeal herein taken is so manifestly frivolous that counsel for defendant, appellant here, has neither appeared to argue his appeal nor filed a brief to urge a reversal of the judgment below.
[i-3] The case has been stated and disposed of by the trial judge in an able and interesting opinion, which we now adopt as the opinion of this court, to wit:
“The plaintiffs "bring this suit-to have set aside and declared null and void a school tax *800 voted in ward 5, school district No. 16 on the 23d day of August, 1923. Plaintiffs contend that the tax was illegally carried, as there was no election held at Grays creek precinct in said ward.
“The school board created school district No. 16, which embraces all of ward 5 of La Salle parish, and ordered that an election be held in said district on the 23d day of August, 1923, for the purpose of the qualified electors determining whether a special tax of five mills for school purposes iri that district should be voted. In this district there are two voting precincts, viz. Nebo and Grays creek. In compliance with an ordinance of the school board an election was held at Nebo, and $5,645 assessment was voted fór the tax, $2,305.10 voted against the tax, 11 votes were cast for and 4 against. The tax at this box had in number 7 votes, and in amount $3,339.90. At Grays creek precinct in the said district there was no election held. The secretary of the school board, on the morning of the election, carried the box to Joe Thompson, who had been appointed as one of the commissioners, and who lived within a mile of the voting precinct.
_ “The secretary of the school board carried the commissioner with the box to the voting precinct, and arrived there shortly before 7 o’clock. He waited awhile, and no one appeared, and he went back to Jena. Commissioner Thompson, according to his statement, remained there for more than an hour, and as no one showed up to vote or to assist him in-holding the election he left the precinct and went home, carrying the box with him. This was between 8 and 8:30 o’clock a. m. Several parties, later in the day, who were qualified electors, went to this precinct, and were not able to vote as there was no election being held.
“On the trial of this case J. E. Whatley, S. E. Windham, J. T. Hudson, and J. G. Hatfield said they were deprived of the right of voting, and they would have voted against said tax. Their assessment amounted to $3,495. R. T. Norris, G. 'B. Norris, G. P. Duke, and Jim Corley stated that they went to the precinct, and were denied the right to vote, as there was no election and that they would have voted for the tax. Their assessment being $3,030. A. A. Whatley stated that he went to' the polls, and that there was no election being held, and that he did not know how he would have voted; that his mind was not made up, and his assessment amóunted to $3,065.
“According to the testimony there were nine voters who were deprived of the right of voting at this precinct on account of no election being held.'
“On the trial of the,case attorney for plaintiff objected to the testimony of R. T. Norris, G- P. Norris, G. P. Duke, and Jim Corley, to the effect that, if they had been permitted to vote, they would have voted for the tax. During the trial of the case the court admitted this testimony over the objection of plaintiffs’ counsel, but the court is of the opinion that it' committed an error, and that this testimony should not have been admitted. On this point and on the point at issue in the case neither the attorneys for plaintiff and defendant, nor has the court been .able to locate any decision in point, but the principle of law is that the election should be held on the day and the place ordered. The election was, ordered to be held on the 23d day of August, 1923, at Grays creek, and it should have been held there on that day. To allow voters on the trial of this case in a different ward and some 60 days after the election to testify how they would have voted if the election had been held on the 23d day of August would be equivalent to holding the election at Grays creek precinct in the courthouse in ward 4 on October 17, 1923, when it should have been held on the 23d day of August at Grays creek in ward 5. This cannot be done. There was no objection made to the testimony of the •four voters who said they would have voted against the tax. Again, if- in a contest of an election the voters can be heard in the court to state how they would have voted if an election had been held, this would give room for fraud in any election. While in this election the court is convinced that there was no fraud practiced. If voters could testify in court on a contest how they would have voted if there had been an election,' then the election in any precinct might be omitted, and then in a contest the voters of that precinct might make up their minds different from whát they were on the day of the election, and through other influences might state that they would have voted against the proposition, when as a matter of fact their vote would have been the other way when east, and in this way great fraud could be practiced. * * *
“Section 13 of Act 256 of 1910 reads: ‘That the polls of election ordered and' held under the provisions of this act shall, on the day appointed for any such election, open at seven o’clock a. m. and remain open until and not later than five o’dock p. m.; provided that no election shall be Vitiated by 'a failure to open the polls at the time prescribed or by closing the same before the time prescribed, unless, *802 on a contest, it be proven that voters were thereby deprived of their votes sufficient in number and amount to have changed the result of such election.’
“Section 20 of Act 46 of 1921 (Extra Sess.) reads: ‘The polls shall open on the day appointed, at 7 o’clock a. m., and remain open until and not later than 6 o’clock 'p. m. No election shall be vitiated by the failure to open the polls at the time prescribed, or, by closing before the time prescribed, unless on a contest, it be established that voters were thereby deprived of votes sufficient in number and amount to have changed the result of the election.’
“From the reading of these sections it is plain that the Legislature did not have in mind that on a contest the voters who were deprived of their votes on account of the polls being closed should testify how they would have voted, but all that would be necessary to establish on a contest is the fact that a sufficient number of voters had been deprived of their right to vote to have changed the result of the election if permitted to vote.
“If the election had carried at Nebo by number and amount sufficient to overcome the number of voters and amount deprived of voting at Grays creek precinct, then the election would be valid, though no election was held at Grays cre(ek precinct, but, since the evidence shows the number of voters and amount deprived of the right to vote at Grays creek precinct was sufficient to overcome the number of votes and the amount of taxes carried at Nebo, the tax is a nullity, and it will therefore be so ordered.”
Decree.
The judgment appealed from is therefore affirmed.