LAND, J.
 

 On April 7, 1925, the school board of Livingston parish ordered a special parish-wide election to be held on May 28, 1925, at which was submitted to the property taxpayers, duly qualified as electors, the proposition to levy a 3 mills tax for 10 years as additional aid to the public schools.
 

 The result of the election held was promulgated by the school board, and indicated a majority of 38 votes in number, and $88,720 in amount in favor of the proposition.
 

 An ordinance was passed by the school board levying the tax, and requiring its collection on all property within the parish-wide school district.
 

 Petitioners, as duly qualified electors and property taxpayers of said district, seek to have annulled and set aside in the present suit the special election held on May 28,1925, and the ordinances, resolutions, and proceedings of the school board levying said special tax, and pray that defendant board be restrained from taking any further steps toward the collection of said tax.
 

 Among the various grounds of attack upon the special election and proceedings of the school board, petitioners allege that no election was held in precinct 1 of ward 10, and in precinct 2 of ward 7 of Livingston parish, and éhat a majority of the legally qualified voters and property taxpayers entitled to vote at these two precincts was against the tax, and was sufficient, both in number and in amount, to have changed the result of the' election, and to have defeated the proposition tó levy the special tax.
 

 It is admitted that the judgment of the lower court annulling the election and enjoining the school board from collecting the special tax in question is based upon the specific grounds above stated. The school board has appealed.
 

 1. It is conceded by defendant board that no election was held at either of these precincts, and that the duly qualified taxpayers in the precincts named, who were deprived of the right to vote at the special election, were sufficient in number and in amount to have defeated the proposition to levy the special tax.
 

 The school board contends, however, that it desired- to hold the election, and alleges that it did everything in its power to do so; that the board provided the boxes and all necessary paraphernalia for holding the election in these precincts; appointed commissioners and clerks to serve there; but avers that so little interest was taken in the election at these two boxes that no one would serve as commissioner.
 

 In other words, the school board contends that the special election was not held in these precincts through any fault or design of its own, but that the failure to hold the election was due solely to' the laches of the voters of these precincts.
 

 In one of the precincts, a member of the school board waited at the polling place with the box about two hours, and, as no one came to serve as commissioner, the box was removed by him, and left at his store.
 

 In the other precinct, the box was removed from the polling place at 4 o’clock p. m., because of absence of necessary commissioners. A very small percentage of the qualified voters of these two precincts was called upon to serve as commissioners at either polling place, and the removal of the boxes deprived the voters of their legal right to elect their own commissioners, and to proceed with the election. Act 256 of 1910, § 9; Act 46 of 1921, § 17.
 

 
 *269
 
 Voter's appeared at the, polls in both of these precincts, and were deprived of their right to vote, as no election was held, or could be held under the circumstances.
 

 The ultimate fact in the case is that neither box at these two polling places was opened at all on the day of the special election, and not a vote was cast at either polling place. We see no difference in principle between the case at bar and the case of Whatley et al. v. La Salle Parish School Board, 155 La. 797, 99 So. 603, in which a special election to vote a school tax was set aside, because no election was held at one of the two precincts at which it had been ordered by the school board; the proof in that case being that voters were thereby deprived of their votes sufficient in number and in amount to have changed the result of the election.
 

 The facts, as stated in the opinion in the Whatley Case, are as follows:
 

 “At Gray’s Creek precinct in the said district there was no election held. The secretary of the school board, on the morning of the election, carriéd the box to Joe Thompson, who had been appointed as one of the commissioners, and who lived within a mile of the voting precinct.
 

 “The secretary of the school board carried the commissioner with the box to the voting precinct, and arrived there shortly before 7 o’clock. He waited awhile, and no one appeared, and he went back to Jena. Commissioner Thompson, according to his statement, remained there for more than an hour, and as no one showed up to vote or to assist him in holding the election he left the precinct and went home, carrying the box with him. This was between 8 and 8:30 o’clock a. m. Several parties, later in the day, who were qualified electors, went to this precinct, and were not able to vote as there was no election being held.”
 

 The special election in the present case was held under “the laws of Louisiana applicable thereto,” as declared in the ordinance of the school board calling the election.
 

 Section 13 of Act 256 of 1910 declares:
 

 “That the polls of election ordered and held under the provisions of this [act] shall, on the day appointed for any such election, open at seven o’clock a. m. and remain open until and not later than five o’clock p. m.; provided that no election shall be vitiated by a failure to open the polls at the time prescribed or by closing the same before the, time prescribed, unless, on a contest, it be proven that voters were thereby deprived of their votes sufficient in number and amount to have changed the result of such election.”
 

 Section 20 of Act 46 of 1921 (Extra Session) contains provisions similar to those of Act 256 of 1910; the opening of the polls being fixed in the Act of 1921 at 7 o’clock a. m., and the closing not later than 6 o’clock p. m.
 

 Both of these acts relate to special elections held for the purpose of levying a special tax or forced contribution, or issuing bonds.
 

 In construing the sections of these acts cited above, the court in the Whatley Case said :
 

 “ ‘Erom the reading of these sections it is plain that the Legislature did not have in mind that on a contest the voters who were deprived of their votes on account of the polls being closed should testify how they would have voted, but all that would be necessary to establish on a contest is the fact that a sufficient number of voters had been deprived of thpir right to vote to have changed the result of
 
 phe
 
 election if permitted to vote.’ ” Page 801 (99 So. 604).
 

 In the Whatley Case, the school board furnished the box at the Gray’s Creek voting precinct, and delivered the commissioner there with all of the paraphernalia necessary to hold the election. The other commissioners having failed to attend, the box was removed before the hour fixed for the closing of the polls, as in the instant case, and the voters at the Gray’s Creek precinct were thereby deprived of their right to elect- commissioners and to proceed with the election. Under that state of facts, the election was annulled by this court.
 

 The construction placed upon these sections of acts 1910 and 1921 in the Whatley
 
 *271
 
 Case is in harmony with the decisions in other states upon the same subject. The law applicable in such cases is stated in 9 R. C. L. § 111, p. 1108, as follows:
 

 “So even if the polling place in one precinct is not opened at all, and no election is held, this does not of itself invalidate the election held in the county unless it appears that the general result was thereby changed,' and the burden of showing this lies upon the person contesting the result as returned” — citing L. & N. R. Co. v. Davidson County Court, 1 Sneed (Tenn.) 637, 62 Am. Dec. 424.
 

 It is provided in the ordinance of the school board ordering the special election in this ease that “at said special election the polls will open at seven (7) o’clock a. m., and close at six (6) o’clock p. m.” It was the clear duty of the school board, under the circumstances of the case, to have kept these boxes at the two precincts designated in the ordinance calling the special election during the hours of 7 a. m. to 6 p. m. on the day of the election, instead of moving from the polling places one of the boxes after waiting several hours, and the other at 4 p. m., or two hours before the time fixed .for closing the polls.
 

 Because a few voters at these two precincts declined to act as commissioners is no good or valid reason why these boxes should have been removed before the hour for closing the polls arrived. Other voters appearing there might have elected commissioners and proceeded with the election, had the boxes been kept at the polling places, and made accessible to the voters.
 

 . It is too plain 'for serious argument that a majority of the voters of a precinct cannot be. estopped, under pur, laws relative to special tax elections, from'contesting the result .of an election, merely because of the failure, or the laches, of a handful of voters in serving. as commissioners, - where, the. ballot box has been removed from the .polling place long before the hour fixed, for the closing of the p.Qlls, gndj the. majority is. thereby deprived of the legal right to elect commissioners, to proceed with the election, and to vote.
 

 The rule that ordinarily a provision as to the time of opening and closing the polls is considered directory applies only to unsubstantial departures from the law, and not to such radical omissions to comply with the provisions of a directory statute as will lead to the conclusive presumption that injury must have followed. 9 R. O. L. § 111, p. 1107.
 

 The special law of the case, however, is found in the statutes of this state relative to the time of opening and of closing the. polls at special tax elections. It is expressly provided in these statutes that a violation of their provisions as to the time of opening or of closing the polls at such elections shall not vitiate the election, “unless * * * it be proven that voters were thereby deprived of their votes sufficient in number and amount to have changed the result.” Act 256 of 1910, §§ 9 and 13; Act 46 of 1921, §§ 17 and 20.
 

 The statutory proof required in this case is admitted. Shautin v. Board of Com., 159 La. 439, 105 S.o. 441.
 

 Judgment affirmed.