O’NIELL, C. J.
 

 I respectfully dissent from the majority opinion and decree which, in effect, maintains that section 12 of the Act 46 of 1921, providing that the governing authority of the taxing district “shall designate the
 
 polling placas,”
 
 has done away with the requirement in sections 1 and 3 of article 8 of the Constitution that the residence qualifications of a taxpayer as a voter in' a special tax or bond election shall be that he shall have been an actual bona fide resident of the state for two years, of the parish for one year, and of the voting precinct, in which he offers to vote, for three months next preceding the election. That is the precise and simple language of the Constitution. The Legislature
 
 *219
 
 was thereby forbidden to do away with any of the qualifications of a taxpayer as a voter.
 

 The provision in section 12 of the act, that “the governing authority ordering the election shall designate the polling places,” was not intended to allow the governing authority — the school board in this instance — to abolish the
 
 voting precincts
 
 established by the police jury, or to convert the entire taxing district into one vast voting precinct, with only one “polling place,” where every taxpayer in the district would have to go to cast his vote — and at which “polling place” the voters residing in other
 
 voting precincts
 
 would be permitted to vote, in violation of the residence qualifications required by the Constitution and the statute itself; for the very next section (section 13) of the statute declares:
 

 “Only property taxpayers qualified as electors under the Constitution and laws of this state shall be entitled to vote at any election hereunder. The qualifications of such taxpayers as voters shall be those of age,
 
 residence,
 
 poll tax payment, and registration as voters, as prescribed by the Constitution and statutes, without regard to sex. There shall be no voting by proxy.”
 

 I have italicized the important word
 
 residence,
 
 because, in that respect, one of the qualifications prescribed by the Constitution is that the taxpayer “shall have been an actual bona fide resident of the * * * precinct in which he offers to vote, three months next preceding the election.” Why speak of three months’ residence in the
 
 precinct
 
 in which the taxpayer offers to vote, if the governing authority calling the election can, in utter disregard of the Constitution, abolish the precincts in which the voters are, respectively, registered as being entitled to vote?
 

 The reason why, in section 12 of the act, the governing authority calling the election “shall designate the polling places” is that the taxing district, as created for the purpose of levying the tax, may include only parts of the
 
 voting precincts,
 
 as established by the police jury, under authority of sections '38 and 39 of the Act 130 of 1916, pp. 301 and 302; and the part of a
 
 voting precinct
 
 embraced within a taxing district created for the purpose of levying a special tax might not take in the customary “polling place” theretofore designated by the police jury. The term “polling places” in the provision of section 12 of Act 46 of 1921, that the governing authority ordering a special election “shall designate the polling places,” means the place in each voting precinct at which the polling booth is established and at which the election commissioners are assembled. The term “polling places” in section 12 of Act 46 of 1921 is not synonymous with “voting precincts”, in sections 38 and 39 of the Act 130 of 1916. For example, section 71 of the act refers to “the officers whose duty it is to designate and appoint polling places.” Those officers are not authorized to create
 
 voting precincts.
 
 By sections 38, 39 and 40 of the Act 130 of 1916, a
 
 voting precinct
 
 (even in New Orleans) must contain not more than 400 voters, “as nearly as practicable.” In section 39 it is provided:
 

 “The precincts and polling places, or any one of them, once established under this act, shall not be changed except by a vote of the police jury given in favor of said change, and then not within three months prior to a general election.”
 

 The reason for the three-months’ limit is, manifestly, that one of the qualifications required of a voter is that he shall have resided in the precinct in which he offers to vote, three months next preceding the election. By section 12 of the Act 46 of 1921 the governing authority in a special tax or bond election may, for the reasons which I have stated, change the
 
 polling place
 
 in any precinct, but it takes a vote of the police jury to change a voting precinct.
 

 We must bear in mind that sections 1 and 3 of article 8 of the Constitution apply as well to parishes and municipal corporations as to other political subdivisions. According to
 
 *221
 
 the majority opinion in this case, the police jury of a parish having the ordinary length and breadth of about 35 or 40 miles, or the municipal council of New Orleans, Shreveport, Baton Rouge, or Monroe, could provide for only one voting precinct in the case of a special tax or bond election. It will not do to say that the courts would have authority in such case to annul the election if the courts were of the opinion that there were not enough voting precincts provided for the convenience of the taxpayers desiring to vote; for that would be a matter for the governing authority of the parish, municipality, or other political subdivision to determine.
 

 In Milton v. Lincoln Parish School Board, 152 La. 762, 84 So. 387, we said:
 

 “Under Const. 1913, art. 197, § 1, and article 199, requiring an elector to have been a resident of the parish for one year, and of the precinct for six months, where there was only one voting precinct in a school district embracing territory lying in two parishes, and \ oters from one parish went to the precinct in the other parish and voted at a bond election, their votes were improperly counted.”
 

 In Whatley v. La Salle Parish School Board, 155 La. 797, 99 So. 603, we said:
 

 “Where, in a suit to set aside a school tax election on the ground that no election was held in one of the voting precincts, the evidence showed that the number of voters and the amount deprived of right to vote was sufficient to overcome the number of votes and amount of taxes carried at other precincts, the tax was a nullity.”
 

 In Shautin v. Board of Commissioners of St. Landry-St. Martin Gravity Drainage District, 159 La. 439, 105 So. 441, we said:
 

 “Where drainage district embraced territory in two parishes, and voting on bond issue was only in one, votes cast by voters of other parish were illegal, and though bond issue had a majority in the number of votes it was defeated where, had such illegal votes, which were for the bond issue, been voted in their proper parish and against the issue, the vote for the issue would have lacked majority in amount of property voted.”
 

 An attempt is made in the majority opinion in this case to distinguish it from the three cases cited, but the reasons for which those cases were decided as they were decided are also applicable to this ease. The constitutional requirement that a voter shall have resided for twelve months in the parish in which he offers to vote is not more emphatic than the constitutional requirement that he shall have resided three months in the voting precinct in which he offers to vote. According to the majority opinion, if the governing authority calling a special tax or bond election sees fit to consider the whole taxing district, or parish or municipality, as the case may be, as one gigantic voting precinct, any taxpayer who has resided within that area for three months next preceding the election —and who has the other qualifications required by the Constitution and the statutes —is entitled to vote, no matter how often or how recently he. has changed his residence from one voting precinct to another within the taxing district, or parish or municipality, as the case may be.
 

 If that is so, the ballot boxes will have to be enlarged to accommodate the voters coming from the many miles around. According to sections 38, 39 and 40 of the Act 130 of 1916, a ballot box, even in New Orleans, is made to hold approximately 400 ballots — 400 being approximately the maximum voting population of a precinct. The average area of the voting precincts in the country parishes is about 25 or 30 square miles. The statute requires that, in designating the polling places in the several voting precincts, the officers intrusted with the duty — the school board in this instance, the chief of police in New Orleans — shall see that they are centrally located, or as nearly so as practicable. The idea is to make it equally convenient for the voters throughout each voting precinct to enjoy the franchise.
 

 The obvious reason why the Constitution
 
 *223
 
 forbids an elector to vote outside of the precinet in which he resides and is registered as a qualified voter is that the commissioners of election, being also residents of the precinct, are acquainted with and can identify those who are entitled to vote. That is just as important in a special tax or bond election -as it is in the election of public officers. At
 
 any
 
 rate, the writers of the provisions in the Constitution and the statutes on the subject thought so.
 

 The 57 taxpayers who did not vote in this election — for want of a polling place in their voting precinct- — and whose votes might have •changed the result of the election, were warranted in their belief — if they knew that an ■election was going on in the other precinct —that they had no right to vote in that precinct, where they were not registered as qualified voters.