**90**

740 P.2d 511

Lester H. BABNEW,
Plaintiff/Appellant,

v.

Robert LINNEMAN, Santa Cruz County
Board of Supervisors, Camilo Ahuma-
da, Cesar Parada, Ronald Morriss, as
members of Santa Cruz County Board
of Supervisors, Fran DeCillis, Clerk of
the Board of Supervisors, Santa Cruz
County, Defendants/Appellees.

No. 2 CA–CV 87–0094.

Court of Appeals of Arizona,
Division 2, Department A.

July 7, 1987.

Larson, Soto & Arana by James A. Soto
and Robert C. Martin, Nogales, for plain-
tiff/appellant.

James F. Haythornewhite, Nogales, for
defendant/appellee Linneman.

Jose Luis Machado, Santa Cruz Co.
Atty., Nogales, for defendant/appellee San-
ta Cruz County Bd. of Sup'rs.

OPINION

HOWARD, Presiding Judge.

This case concerns the election of the
chief of the Rio Rico Fire District. The
candidates for office were Lester H. Bab-
new and Robert Linneman. The election
was held during the November 4, 1986 gen-
eral election, and the November 10 official
canvas of the election showed that 212
votes had been cast for Linneman and 209
for Babnew. On November 14, Babnew

filed an election contest. On November 19, before any responsive pleadings were filed, the court ordered a recount.

On November 21, the Board, the clerk of the Board, and Santa Cruz County filed an answer to the contest and on November 24, Linneman filed his answer. Although A.R.S. § 16–676 required the contest hearing to be held no later than November 29, (10 days after the election contest was filed, plus an additional 5 days if good cause is shown), the court set the hearing for December 1.

The hearing commenced on December 1 and resulted in the trial court's order giv-ing Babnew two more votes and confirming Linneman as the winner by one vote. Still pending was the recount previously ordered by the trial court. On December 19, the clerk of the Board conducted a recount, independent of the contest hearing. The result of the recount was the addition of one vote to Babnew's tally. The trial court agreed with the recount and entered an order in the recount proceedings determining that Robert Linneman was the winner of the election contest by a margin of two votes.

Because the result of the recount, when combined with the result of the election contest, would result in a tie, Babnew moved the trial court to amend its order in the election contest to include the result of the recount. The trial court refused. This appeal concerns the trial court's refusal to amend its order to include the result of the recount, its refusal to consider certain votes which would have added two additional votes to Babnew's total, and its consideration of the two votes which it added to Linneman's total.

Appellees have raised three cross-issues. They contend the trial court should not have heard the election contest because the hearing was held beyond the time mandated by A.R.S. § 16–676, that the court erred in considering a vote cast by a person compelled to disclose which candidate she voted for, and that the court erred in recognizing the recount.

Before these issues can be resolved, additional facts are necessary. Rio Rico Fire Station was the official polling place for all voters registered in Precinct 7 of Santa Cruz County. A Precinct 7 is divided into several school and fire districts. Precinct 7 voter could have lived within any one of six possible combinations of fire and school districts. To accommodate this situation six different color-coded ballots were prepared for computerized balloting and tabulation. It was vital to the computerized program that a voter be given the correct ballot. As a result of misinformation given to the election programmers, some voters who were in the Rio Rico Fire District were given the wrong ballots, some who resided outside the Rio Rico Fire District were allowed to vote in the Rio Rico District election and some were given a ballot but were wrongfully told that they could not vote for the Rio Rico Fire District because they were residents of another fire district. In the election contest proceedings the trial court admitted into evidence the testimony of these voters and in its judgment made the following findings:

" * * *

Todd Harrison, Roger Hendrix and Sharon Hendrix all live within the boundaries of the Rio Rico Fire District.

The three foregoing voters voted for Mr. Babnew as fire chief however their vote was not recorded because they received a ballot from the election officials which would not have allowed those votes to be recorded for Mr. Babnew.

The effect of these errors is to add three votes to Mr. Babnew's tally.

Sherry Kane, Jones Ross and Pam Pesqueira all live within the boundaries of the Tubac Fire District.

When each of these individuals voted on November 4, 1986, they received ballots for the Rio Rico Fire District election and were allowed to vote for Mr. Linneman.

The effect of this error is to deduct three votes from the tally of votes received by Robert Linneman.

Mrs. Kane's declaration concerning Mr. Kane's vote will not be considered by this court because the declarations are

unreliable hearsay upon which this court refuses to rely.

Michael Roie Karam's and Beverly Jo Karam's votes will not be considered by this court because they were not residents of the Rio Rico Fire District at the time of the election and therefore their vote cannot be considered legal.

Mr. and Mrs. Wilcox both live within the confines of the Tubac Fire District and were allowed to cast their vote for Mr. Lester Babnew.

The effect of this error is to deduct two votes from the tally of votes for Lester Babnew.

Deborah Keith lives within the boundaries of the Rio Rico Fire District and she voted for Lester Babnew, however her vote was not counted because she received a ballot for the Tubac Fire District.

The effect of this error is to add one vote to the tally of votes for Lester Babnew.

Nicolas Sekulich lives within the boundaries of the Rio Rico Fire District and he voted for Robert Linneman, however his vote was not counted because he received a ballot for the Tubac Fire District.

The effect of this error is to add one vote to the tally of votes for Robert Linneman.

Terry Sires and Donna Sires both live within the boundaries of the Rio Rico Fire District, however when they went to vote they were not allowed to vote for the Rio Rico Fire Chief, instead they received ballots which would have allowed them to vote for the Tubac Fire Chief.

Mr. and Mrs. Sires both refused to cast ballots for the fire chief although they voted for the other candidates and propositions on the ballot on November 4, 1986.

\* \* \* \* \* \*

Mr. and Mrs. Sires were not allowed to vote for Mr. Linneman and the effect of this error by the election officials is to add two votes to Mr. Linneman's tally."

■ Before proceeding any further, we shall discuss the cross-issue presented by appellee regarding the untimeliness of the hearing which commenced two days after the time limit set by A.R.S. § 16–676(A), which provides:

"In any contest brought under the provisions of § 16–672 or 16–674, upon the filing of the answer, or if no answer is filed, upon the expiration of the time specified in the summons, the court shall set a time for the hearing of the contest, not later than ten days after the date on which the statement of contest was filed, which may be continued for not to exceed five days for good cause shown."

In *Diaz v. Superior Court,* 119 Ariz. 101, 579 P.2d 605 (App.1978), we held that where the statement of contest is timely filed but service is delayed without fault of the contestant, the statutes must be construed to allow the hearing after the summons has been served and the time for answering by the contestees has expired. Here, the delay was caused by the trial court's failure to perform the duty imposed on it by statute. The purpose of the time limitation is to ensure a resolution of the contest as soon as possible so that the winner can take the office to which he was rightfully elected. The appellee sat idly by in this case, after receiving notice of the date of the hearing, making no attempt to inform the trial court that it had set the case beyond the statutory limitation. The election contest having been properly filed, we do not believe that the rights of the appellant can be defeated by the mere failure of the trial judge to perform his statutory duty. The trial court did not err in proceeding with the hearing.

■ We now address the issue that is determinative of this case. Because Terry and Donna Sires never actually cast a vote for the office of chief of the Rio Rico Fire District, appellant contends the trial court erred in counting their votes. We agree, but the errors in this case go deeper. Not only did the trial court err in counting the Sires' votes, but it also erred in counting the votes of those voters who were given the wrong ballots.

The rule governing this case is found in *Pennington v. Hare*, 60 Minn. 146, 62 N.W. 116 (Minn.1895):

"... It is not necessary to decide this point, for the record presents the simple question, can votes not cast, because of an error of judgment on the part of the election officers, be counted as if cast and returned? We are clearly of the opinion that they cannot be. Where a ballot has been marked by the elector, properly cast, and returned, we have something tangible and certain to deal with, and from it we unerringly read the intention and act of the elector. But where, as in this case, the supposed ballots were never in existence, and we must rely upon the subsequent declarations of the electors as to how they intended to and would have marked and cast their ballots, if they had voted, it would be an uncertain and dangerous experiment to attempt the task of ascertaining and giving effect to their intentions, as ballots actually cast and returned. Uncertain, because it would be simply a matter of speculation; dangerous, because it would give to such electors the power of determining the result of an election, in a close contest. All that it would be necessary for them to do, in such a case, to decide the election, would be to declare that they intended to vote for a particular candidate. It would enable them to sell the office to the candidate offering the highest price for it, because they would not be called upon for their declaration until a contest arose, after the actual ballots had been counted, and the precise effect of their statement known. They could swear falsely as to their past intentions, without fear of punishment, for how would it be possible to disprove their statements as to their intentions with reference to a supposed act, if perchance they had acted? [citation omitted] It seems a hardship that an elector should lose his vote by reason of an error of the election judges, but errors of judgment are inevitable; and, whenever any possible remedy which can be suggested is inconsistent with the highest public interests, they are remediless. The proposition that the title to a public office can be made dependent upon the subsequent statements of an elector as to what he would have done, if he had been permitted to vote, is not only contrary to sound public policy, but seems to be simply unthinkable."

In *Young v. Deming*, 9 Utah 204, 33 P. 818, 820 (1893) the Utah Supreme Court pointed out the danger of allowing an elector to testify after the election as to how he intended to vote or how he would have voted if he had been permitted to do so:

"We know from common experience that those who do vote are usually unwilling that the character of their votes be made public, and that whenever there is an investigation as to the actual vote cast it is almost certain to bring about prevarication and uncertainty as to what the truth is; and while in this case before us no special reasons exist for casting reflections upon the truth of those who participated in the election, yet, it is deemed unwise to lay down any rule by which the certainty and accuracy of an election may be jeopardized by the reliance upon any proof affecting such results that is not of the most clear and conclusive character. The temptation to actual fraud and corruption on the part of the candidates and their political supporters is never so great as when it is known precisely how many votes it will take to change the result, and men who are willing to sell their votes before election will quite as readily sell their testimony afterwards, especially as the means of detecting perjury and falsehood is not always at hand until after the wrong sought to be accomplished by it has become successful, and the honest will of the people has been thwarted."

In the case of *Duncan v. Willis*, 157 Tex. 316, 302 S.W.2d 627, 634-35 (1957) the court states:

"The receiving of testimony from the voter as to his intention cannot be supported upon the theory adopted by the trial court. Gunn's ballot was not mere-

ly ambiguous but wholly void. It would be anomalous to say that a vote which an election judge must necessarily reject could be accepted as a legal vote by a district judge trying an election contest upon the say so and perhaps afterthought of the voter who cast the defective and contradictory ballot. While it is a rule of general application that the will of the voter should prevail, the election code specifically provides the means whereby the voter shall make that intention known and one of the ways *not provided* by the code is to testify how he intended to vote—after the election is over. The books reflect repeated warnings of the dangers of this practice. In *Davis v. State ex rel. Wren*, 75 Tex. 420, 12 S.W. 957, 960 (1889), Mr. Justice Gaines in discussing the public policy considerations relative to this procedure said: 'The declarations of the voters Albert S. Payne and Lewis Jackson, made after the election, were properly excluded. Upon this question we have no doubt. * * * Besides, we think the admission of such testimony would contravene a sound public policy. It would open a door to fraud to permit a voter who may have changed his mind as to his choice of candidates, and who may have become dissatisfied as to the declared result, to affect the determination of a contest by his declarations.' " (Emphasis in original.)

In accord with the foregoing cases are *Whatley v. LaSalle Parish School Board*, 155 La. 797, 99 So. 603 (1924); *Martin v. McGarr*, 27 Okla. 653, 117 P. 323 (1910); *Pawlowski v. Thompson*, 64 S.D. 98, 264 N.W. 723 (S.D.1936); but see *Helm v. State Election Bd.*, 589 P.2d 224 (Okla.1979).

The ballots upon which the court relied here never existed. If they could not be counted and relied upon by election officials, how could they be counted and relied upon by the trial court from the testimony of the voters taken after the election? For all practical purposes there is no difference between not being allowed to vote because of the refusal of the election officials and not being allowed to vote because the wrong ballot is provided. In either case, one cannot be allowed to testify as to the candidate for whom he would have voted for the purpose of increasing the votes for that candidate.

■ Contrary to appellant's contention the trial court did not err in subtracting the Karams' votes from his total. The Karams did not reside in the Rio Rico Fire District. Their vote was illegal. The grounds for an election contest are set forth in A.R.S. § 16–674 and include illegal votes. Appellant contends that the disqualification of a voter based upon his residence can only be accomplished by a challenge prior to his voting. We do not agree. A.R.S. § 16–591 provides:

"A person offering to vote may be orally challenged by any qualified elector of the county upon any of the following grounds:

\*     \*     \*     \*     \*     \*

(3) That he has changed his residence from the precinct in which he is registered more than fifty days next preceding the election."

Attorney General Opinion No. 64–44–L (1964) states:

"We conclude that challenges may not be used against absentee voters, that the ordinary voter may be challenged before casting his ballot, and *that no challenge may be exercised against a ballot already cast.*" (Emphasis added)

Appellant seizes upon the emphasized language in the Attorney General's opinion to substantiate his position. What appellant overlooks is that the statute and the Attorney General's opinion deal with oral challenges. An oral challenge cannot be made after the vote is already cast. This does not mean, however, that the vote cannot be attacked as illegal in an election contest.

■ Appellee Linneman, as a cross-issue, contends the trial court erred in requiring Sherry Kane, who resided in the Tubac Fire District, to disclose for whom she voted, which resulted in one less vote for appellee. Assuming arguendo that appellee is not seeking to enlarge his rights by this issue,

we do not agree.[1]  The claim against self-incrimination is a personal privilege on the part of a witness.  Mrs. Kane did not claim the privilege.  If a witness discloses that he *did* vote, and it is shown clearly to be an illegal vote, then he may be compelled to disclose for whom he voted.  *In re Sugar Creek Local School Dist.,* 185 N.E.2d 809 (Ohio Com.Pl.1962).

The last issue concerns the recount.  The relevant portion of A.R.S. § 16–667 provides as follows:

> "This article is supplemental to and not in derogation of the law relating to contest of elections and, upon the initiation of such a contest, a proceeding begun under this article shall abate."

The trial court ordered a recount after the statement of contest had been filed.  Appellee contends that even though the recount was ordered after the contest had commenced, the recount should have been abated and the trial court erred in allowing the recount to continue upon entering a determination of the results of the contest.

Appellant contends that the plain wording of the statute shows that it only applies when a recount is commenced prior to the filing of the statement of contest and that the trial court erred by failing to amend the judgment and the election contest to reflect the results of the recount.

 We first observe that the statutes dealing with recounts, Art. 12, Laws 1979, ch. 209, § 3, deal with the automatic recount, required by A.R.S. § 16–661 when the margin of votes is a certain percentage or a certain number.  The obvious purpose of abating the automatic recount is to spare the expense of such a recount when, after an election contest, the recount may not be necessary if the election is voided or, as a result of the contest, the margin of votes no longer mandates the automatic recount.  While the word "abate" may, in dealing with abatement of civil actions, mean "to put an end to" or "to nullify," it may have an alternative definition, depending upon circumstances in which the term is used.  *Noga v. Noga,* 119 Ariz. 302, 580 P.2d 763 (App.1978).  It has been held that the meaning of the word "abate" used in a statute directing the trial court to abate an action which involves an issue which the parties have agreed to arbitrate, is equivalent to a "stay."  *Jackson v. Penny Duquette Knits, Inc.,* 276 Or. 465, 555 P.2d 201 (1976).  When the purpose of § 16–667 is considered, we believe the word "abate" means "stayed" and not "terminated."  Assuming arguendo, that A.R.S. § 16–667 applies when the recount is commenced after the statement of contest is filed, we believe that the trial court did not err in allowing the recount to go forward and in entering a determination of its results.

We do not find, in the statutes, any requirement that the trial court amend its judgment in order to reflect the results of the recount.  All that is required under A.R.S. § 16–676(B) is that the court either confirm or annul and set aside the election.  The trial court must, of course, refer to the recount result in order to decide whether to confirm the election.  Here, the recount showed that Linneman had 212 votes and that Babnew had 210.  The election contest shows that Linneman had three illegal votes and Babnew had two.  This means that Linneman had a total of 209 votes and Babnew had a total of 208.  Linneman was still the winner.  The trial court came to the right conclusion.

Affirmed.

FERNANDEZ and ROLL, JJ., concur.

---

1.  If appellee seeks to attack the judgment either to enlarge his own rights or lessen those of his adversary, he must file a cross-appeal.  *Marico-* *pa County v. Corporation Commission of Ariz.,* 79 Ariz. 307, 289 P.2d 183 (1955).