Jovita **Taimanao**, Abraham R. Taimanao and Jose Inos, Petitioners,

v.

**Superior Court** of the Commonwealth of the Northern Mariana Islands, Respondent, and Lucas L. Mendiola, Vicente Manglona, Vicente M. Atalig, Frances M. Sablan and Efrain M. Atalig, Real Parties in Interest. Original Action No. 94-001 Opinion and Order March 1, 1994 Amended March 17, 1994

---

Argued and Submitted February 23, 1994

Counsel for petitioners: David A. Wiseman, Saipan.

Counsel for real parties in interest: Daniel R. Del Priore, Saipan (Atalig, Del Priore & Gumataotao).

BEFORE: DELA CRUZ, Chief Justice, VILLA-GOMEZ, Justice, and MACK, Special Judge.

DELA CRUZ, Chief Justice:

■ We are asked to issue a writ prohibiting the Superior Court from asserting jurisdiction over a Rota election contest filed by the real parties in interest ("contestants"). We have jurisdiction to issue extraordinary writs pursuant to our general supervisory powers. 1 CMC § 3102(b); *Tenorio v. Superior Ct.*, 1 N.M.I. 1, 7 (1989). The petitioners contend that the Superior Court lacks jurisdiction to hear this cause because: (1) the court failed to initiate a hearing on the election contest within the fifteen to twenty-day period set forth in 1 CMC § 6424, and (2) the contestants failed to timely effectuate proper service of the complaints on the petitioners. We disagree and deny the application.

## FACTS AND PROCEDURAL BACKGROUND

On January 6, 1994, the Northern Mariana Islands Board of Elections ("Board") certified that the petitioners had won election to public office in the November 6, 1993, general election. Petitioners Jovita Taimanao and Abraham Taimanao were declared elected to the Rota Municipal Council and petitioner Joseph S. Inos was declared elected mayor of Rota. On January 13, 1994, the contestants filed three separate complaints against the three petitioners, contesting their election. Amended complaints were filed the next day, but were subsequently stricken by the court because of the contestants' failure to verify them.

The original complaints thus remain. They allege irregularities and improper conduct in the election proceedings and seek, among other relief, an order reversing the election results. The three cases have been consolidated below.

The proof of service filed with the trial court states that copies of both the original and amended complaints were delivered to the Board on January 17, 1994. However, the original complaints were faxed to the Board on January 13. *Mendiola v. Taimanao*, Civ. Nos. 94-0024, 94-0025 & 94-0026 (consol.) (N.M.I. Super. Ct. Feb. 9, 1994) (Decision and Order on Motion to Reject Pleadings and Motion to Dismiss at 3:10-12) ("Order on Motion to Dismiss"). The Board, in turn, delivered copies of the complaints to the petitioners. Inos received his copy on January 20. Jovita and Abraham received their copies on January 24. These two petitioners thus received their copies of the complaints more than five days from the date the original complaints were served by facsimile on the Board.

Each petitioner submitted an affidavit stating that no summons was ever delivered to him or her. Each petitioner made a special appearance and moved to dismiss the actions on January 25.

On January 27, the Superior Court scheduled a hearing on the motion to dismiss for January 31, within the fifteen to twenty-day time frame set forth by 1 CMC § 6424. However, the hearing was continued to February 4 because one of the contestants who was later dismissed from the action had not received the motion to dismiss.

On February 9 the Superior Court denied the motion to dismiss the complaints in part. The matter has been set for hearing for March 7 on the merits of the contestants' claims.

On February 11, the petitioners filed the present application for a writ of prohibition to stop the election contest hearing from proceeding for lack of jurisdiction.

## ISSUES

The petitioners present four issues for our consideration:

1. Whether the Superior Court lacks subject matter jurisdiction over these election contests because it failed to initiate the election contest hearing within the fifteen to twenty-day time frame set forth in 1 CMC § 6424.
2. Whether the Superior Court lacks personal jurisdiction over the petitioners because the Board failed to serve them with the complaint within the five-day period prescribed in 1 CMC § 6423(d).
3. Whether the Superior Court lacks personal jurisdiction over the petitioners because the Board failed to timely serve the complaint and summons on the petitioners in compliance with Com. R. Civ. P. 4.
4. Whether the petitioners' due process rights were violated because a summons was not served with copies of the complaint.

## STANDARD FOR WRIT ISSUANCE

■ A writ of prohibition is an extraordinary remedy. It may be issued only to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Tenorio*, 1 N.M.I. at 7. The remedy of prohibition, like that of mandamus, "is a drastic one, to be invo[k]ed only in extraordinary situations." *Sablan v. Superior Ct.*, 2 N.M.I. 165, 168 (1991); *see* 13 James W. Moore, MOORE'S FEDERAL PRACTICE ¶ 820.02[3] (1993 ed.).

■ We decide this matter by applying the guidelines set out in *Tenorio. Commonwealth v. Superior Ct.*, 1 N.M.I. 287, 294-95 (1990). They are: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the lower court's order is clearly erroneous as a matter of law; (4) whether the lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and (5) whether the lower court's order raises new and important problems or issues of law of first impression. *Tenorio*, 1 N.M.I. at 9-10. These factors are to be considered together. *Commonwealth v. Superior Ct.*, 1 N.M.I. at 296.

## DISCUSSION

A. *The Failure to Set the Election Contest Hearing within the Statutory Time Frame*

The petitioners assert that the Superior Court lost jurisdiction over this cause because it failed to begin the election contest hearing within fifteen to twenty days after the original complaint was filed on January 13, 1994. We find this argument unpersuasive.

One CMC § 6424 provides:

Within five days after personal receipt of the complaint by the defendant, an answer or any responsive pleading or motion shall be filed with the court. The court shall thereupon set a date for the election contest hearing not less than 15 days nor more than 20 days from the date of the filing of the complaint.

■ There is no dispute that jurisdiction over election contests derives solely from statute. *O'Dowd v. Superior Ct.*, 111 P. 751, 753 (Cal. 1910). The legislature has conferred jurisdiction on our Superior Court to entertain election contests to ensure fairness in "the conduct of elections" in the Commonwealth. *See* 1 CMC § 6002. The hearing is limited to election contests involving non-legislative offices. *See* 1 CMC § 6423(a). Once the complaint in an election contest has been timely filed, as was done here, the trial court obtains subject matter jurisdiction to resolve the matter.

■ The purpose of time limitations within which to conduct election contest hearings, such as the limitation set forth in 1 CMC § 6424, is to ensure the speedy adjudication of election contests. *See Babnew v. Linneman*, 740 P.2d 511, 513 (Ariz. Ct. App. 1987); *Mahaffey v. Barnhill*, 855 P.2d 847, 849 (Colo. 1993) (en banc).

■ The Superior Court erred in reading the statute to require the court to only, within the fifteen and twenty-day time limits, fix the date of the hearing for some future time. The correct reading requires the court to actually commence the election contest hearing within the fifteen and twenty-day limits. Furthermore, an election contest hearing means a hearing on the merits of the contestants' claims, and not merely on procedural or other defense motion.

■ However, time limits are not meant to restrict the jurisdiction of the court. Furthermore, an "intent to defeat the exercise of the court's jurisdiction will not be supplied by implication." *Garrison v. Rourke*, 196 P.2d 884, 888 (Cal. 1948), *overruled on other grounds, Keane v. Smith*, 485 P.2d 261, 266 (Cal.

1971); *see also Mahaffey*, 855 P.2d at 849. One CMC § 6424 does not contain any language expressly revoking or limiting the court's jurisdiction where the actual hearing on the contest is not initiated within the stated time period.

Colorado is one jurisdiction which has rejected the contention that time limitations for hearing election contests are jurisdictional in nature. In *Mahaffey*, the Colorado Supreme Court stated:

> Section -1305 does not state that jurisdiction is lacking absent the setting of trial within its limitations. In fact, nothing in the statute suggests that it is jurisdictional in nature. Rather, section -1305 recognizes the importance of speedy resolution of election controversies. . . . In light of the fact that we will construe a statute to limit jurisdiction only when that limitation is explicit . . . we conclude that section -1305 creates no limitation on the district court's power to hear this controversy.

*Mahaffey*, 855 P.2d at 849 (citations omitted). We acknowledge the contrary holding in the Alabama case of *Perloff v. Edington*, 302 So.2d 92 (Ala. 1974), cited by the petitioners.[1] However, we disagree with this holding. We will not presume that the legislature intended to divest the court of jurisdiction in an election contest where there is no express intention to do so. We believe that the legislature intended the court to resolve election contests in an expedited fashion; the time limitations in 1 CMC § 6424 were meant to effectuate and not to frustrate that purpose. One CMC § 6424 is not a jurisdictional limitation and should not be technically construed.

The record shows that the hearing on the petitioners' motion to dismiss was, in fact, initially set for January 31, a date within the time frame of 1 CMC § 6424. The hearing would have gone forward on January 31 but for

---

[1] The Ohio cases cited by the petitioners are inapplicable. *Jenkins v. Hughes*, 105 N.E.2d 58 (Ohio 1952) was dismissed for lack of prosecution, not for want of jurisdiction. *McCall v. Board of Educ.*, 157 N.E.2d 351 (Ohio 1959), states that the relevant statutes regarding service of a summons and time limitations for setting a hearing are "mandatory." But the court held that "[i]f the dismissal was for noncompliance with the statute, as is probable, we think such action was proper and finds support under the principal announced and applied in the case of *Jenkins v. Hughes*." *Id.* at 353. We also note that Ohio provides for the court to continue a matter to beyond the time limits imposed by statute, without disturbing the jurisdiction of the court to hear an election contest. *In re Sugar Creek Local Sch. Dist.*, 185 N.E.2d 809, 811 (Ohio 1962).

the continuance granted because one of the contestants did not actually receive the motion to dismiss.[2] Had the trial court heard the motion to dismiss without a continuance, it might have affected that contestant's opportunity to meaningfully confront the motion. The trial court's decision to continue the matter was not abuse of discretion under these facts. We are not persuaded that the legislature intended a reading of 1 CMC § 6424 which would deprive the court of its jurisdiction, particularly here, where the continuance was proper to ensure the procedural fairness of the action.

■ Arizona, California and Colorado have each refused to acknowledge that a court's action in scheduling the actual hearing of an election contest beyond the time limitations provided by statute deprives it of jurisdiction to hear the election contest. *Babnew*, 740 P.2d 511, 513; *Falltrick v. Sullivan*, 51 P. 947, 948 (Cal. 1898); *Moore v. Superior Ct.*, 128 P. 946, 948 (Cal. Ct. App. 1913); *Mahaffey*, 855 P.2d 849. We also reject the contention that the trial court lost jurisdiction because a continuance was granted to allow the contestant to meaningfully oppose the motion to dismiss.

■ The trial court acted within the scope of its discretion in granting the continuance. We find nothing in 1 CMC § 6424 that prohibits the grant of a continuance under these circumstances. We have reviewed the briefing and hearing schedule set by the trial court. We find that the schedule established for the parties will provide for the prompt resolution of this matter.

## B. *The Complaints were Properly Served*

The petitioners also argue that the trial court lacks personal jurisdiction over them because the Board failed to serve them with the complaints within five days after filing as required by 1 CMC § 6423(d). We disagree and adopt the trial court's reasoning rejecting the petitioners' contention on this issue. *See* Order on Motion to Dismiss, *supra*, at 14-15.

■ Service of election contest complaints on defendants is not governed by Com. R. Civ. P. 4 but by the express language of 1 CMC § 6423(d): "[T]he Board

---

[2] Service was made by mail and was proper under the Commonwealth Rules of Civil Procedure, although inconsistent with the expedited nature of the statutory action.

shall cause to be delivered to the defendant a copy of the complaint filed by the contestant" within five days of receipt.[3]

█ It is true that the Board failed to deliver copies of the complaints to the petitioners within five days. Notwithstanding such failure, we agree with the trial court and the authorities cited that, where the failure to serve a timely notice of the election contest is not attributable to the contestant, the court is not deprived of jurisdiction and should proceed with the merits of the case. *Diaz v. Superior Ct.*, 579 P.2d 605 (Ariz. Ct. App. 1987); *O'Dowd*, 111 P. at 752. *See* Order on Motion to Dismiss, *supra*, at 15.

In holding that the failure to timely serve a contestee did not destroy the court's jurisdiction over the election contest, the *Diaz* court held: "In a case such as this one, where through no fault of the contestant the summons is not served prior to the time of the hearing, it is inconceivable that the correct result is the dismissal of the contest." 579 P.2d at 606. The trial court here correctly noted that the petitioners' reliance on *Franson v. Carlson*, 137 N.W.2d 835 (Minn. 1965), was misplaced. The *Franson* court applied Minnesota law, which required both the *filing* and *service* of the election "notice of contest" before jurisdiction vested in the courts. The Commonwealth does not require timely service of the complaint on the contestees to perfect the court's jurisdiction. It is the timely filing, not the service, which perfects the court's jurisdiction to hear the contest.

Here, the complaints were timely filed, and thus the petitioners do not dispute that the Superior Court acquired subject matter jurisdiction to determine this matter. They contend, instead, that the Superior Court lacked *personal* jurisdiction over them because of the Board's failure to timely serve the complaints on them. In *Franson*, the trial court never obtained *subject matter jurisdiction* because of the failure to serve. Here, the absence of timely service on the petitioners did not affect the court's jurisdiction to hear the contest. Jurisdiction immediately vested upon the filing of the complaints. Further, they were in fact served, albeit untimely and through no fault of the contestants.

The Board's failure to deliver the complaints to the petitioners within five days did not deprive the trial court of jurisdiction over this matter, especially where the late service resulted from the Board's failure to serve on time. *See Diaz*, 579 P.2d 605; *O'Dowd*, 111 P. at 752. Were we to hold that the five-day service of the complaint requirement is mandatory and jurisdictional, the

Superior Court would lose jurisdiction every time the Board failed to timely deliver a complaint. Such a reading of the service statute invites procedural abuse.

The contestants did all that was required of them under the election contest statute. The Board's failure to deliver the complaints within five days should not be construed to mean that the court consequently lost jurisdiction.

## C. *The Effect of the Failure to Serve a Summons*

The petitioners' third and fourth contentions are that the contestants' failure to serve a summons with the complaint deprived the court of personal jurisdiction over them, and deprived the petitioners of their due process rights to receive adequate notice of "the implications of the election contests and their rights." Memorandum of Points and Authorities in Support of Petition for Writ of Prohibition at 17.

█ The purpose of a summons, we note, is to command a person to appear or otherwise plead to the complaint filed. *See* Com. R. Civ. P. 4. One CMC § 6423(d) does not, however, specify that a summons be "delivered" to the petitioners; it only requires delivery of the complaint.

We are persuaded by Missouri case law, which has rejected the assertion that a summons must be served on the contestee in order to gain personal jurisdiction over an election contest. In *Foster v. Evans*, 751 S.W.2d 42 (Mo. 1988) (en banc), the contestee argued that in the "absence of personal jurisdiction over the contestee" because of the failure to serve a proper summons, the trial court was without power to preside over the election contest. We quote the Missouri Supreme Court's relevant holding:

> If as a result of election irregularities the wrong candidate is declared the winner, more is at stake than the losing candidate's disappointment; the people have lost the ability to impose their will through the electoral process. Thus to claim that a general election contest is no more than an adversary proceeding between a losing candidate and the officially announced winner is to misunderstand the *raison d'etre* of election contests and to discount the importance the legislature has placed on accuracy in elections. An election contest, as we will later repeat, is an action by which the contestant challenges the conduct of the election itself. In bringing an election contest, the contestant speaks for the entire electorate, seeking to assure all that the

---

[3] We fail to see the rationale of this provision requiring the Board, which is not a party, to serve the complaint on defendants. Nevertheless, that is what the statute requires.

democratic process has functioned properly and that the voters' will is done.

*Id.* at 43-44. *Foster* correctly recognized the special nature of an election contest. California agrees:

> The statute does not confer the right of contest upon the assumption that the personal rights of contending individuals to the office is of particular moment. The right is given to an elector solely, and involves the right of the people to have the fact as to who had been duly elected by them judicially declared.

*O'Dowd*, 111 P. at 753 (citation omitted).

The Missouri Supreme Court concluded in *Foster* that

> From the clear language of the election contest statutes, we conclude that an election contest is procedurally analogous to an in rem action. The res is the election itself. The trial court acquires jurisdiction over the res when the election contest petition is filed in conformity with the requirements of Chapter 115. The contestee has the option to participate in the interest of expanding any issue relating to the contested election.

751 S.W.2d at 45.

In a later action, the Missouri Court of Appeals resolved the same question we face now: does the failure of the contestant to serve a summons deprive the court of personal jurisdiction over the contestee? In *Authenreith v. Conner*, 755 S.W.2d 287 (Mo. Ct. App. 1988), the answer was "no." Relying specifically on *Foster*, the court held:

> Actions in election contest cases are actions in rem; that personal service over the contestee is not requisite for the trial court to acquire jurisdiction; and that *Craig*,[4] in so far as that case prescribes such a requirement for purposes of jurisdiction, is to be followed no longer.

*Authenreith*, 755 S.W.2d at 290. We adopt the rationale of the Missouri courts and hold that service of a summons is not a prerequisite to the court's jurisdiction over the election contest under our statute. We also hold that the lack of service does not deprive a contestee of due process in an election contest, particularly under the facts presented here.

The petitioners have not shown any prejudice for their assertion that they were deprived of due process. They do not even suggest the type of notice that they were due or did not receive, or any resulting prejudice. In fact, the record suggests the petitioners were given adequate notice of this matter.

Each petitioner has received a copy of the complaint filed in this action. In response, they each retained the same counsel, who promptly filed a motion to dismiss the contestants' claims. The documents filed with the court show that each appeared in the action, was acutely aware of his or her rights in this election contest, and has vigorously advanced his or her position below and in this proceeding. No due process violation is evident from the record below.

## CONCLUSION

Although we agree that this case presents an important issue of law with respect to election contests, we are not satisfied that an extraordinary writ prohibiting the Superior Court from exercising jurisdiction over the Rota election contests is warranted. The basic reason for our decision not to issue the writ is that the trial court was not clearly erroneous in asserting subject matter jurisdiction over this case, as well as personal jurisdiction over the petitioners, notwithstanding the failure to begin the election contest hearing within fifteen to twenty days after the complaints were filed and the untimely service of the complaints on the petitioners. These statutory requirements relate not to jurisdiction but rather to the legislative intent to speed up the election contest proceedings.

Based on the foregoing analysis, the petition for writ of prohibition is **DENIED**.

---

VILLAGOMEZ, Justice, dissenting:

I would grant the petition for writ of prohibition on the ground that the petitioners/defendants ("petitioners") were not served with the original complaint within the time required by statute. The trial court consequently did not gain personal jurisdiction over the petitioners. I also note that the trial court's interpretation and application of 1 CMC § 6424 was clearly erroneous.

---

[4] *State ex rel. Craig v. Grimm*, 542 S.W.2d 335 (Mo. Ct. App. 1976).

## Service of Complaint

One CMC § 6423(d) requires that "within five days from the receipt of the verified complaint, the Board [of Elections] *shall* cause to be delivered to the defendant a copy of the complaint filed by the contestant." (Emphasis added). In this case, the verified complaint was not delivered to any of the defendants within five days from the Board's receipt of the complaint. The Supreme Court of Minnesota stated in a case similar to this one that "in the absence of the service of such notice within said time . . . the court does not acquire any jurisdiction." *Franson v. Carlson*, 137 N.W.2d 835, 840 (Minn. 1965) (footnote omitted). The issue in *Franson*, as here, was "[whether] the district court acquire[d] jurisdiction of the contest under the service as made." *Id.* at 836.

The Superior Court correctly pointed out that election contest rights are purely statutory. The legislature may take the rights away or change them. Election statutes, furthermore, are to be strictly construed and enforced. As the *Franson* court stated: "'Compliance with such [a statutorily prescribed] proceeding is a prerequisite to the acquisition of jurisdiction. . . . [I]f the appeal is not taken in the manner and within the time required by the statute, the court acquires no jurisdiction.'" *Id.* at 837 (quoting *Odegard v. Lemire*, 119 N.W. 1057, 1058 (Minn. 1909) (emphasis omitted).

With respect to petitioners Jovita and Abraham, it is clear that there was no service of the complaint within the required five days. However, with respect to petitioner Jose Inos, it appears that if the days were counted pursuant to Com. R. Civ. P. 6(a), service on him would fall within the five-day period.

"[W]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." *Id.* Since a Saturday and Sunday fall within the five days that followed the Board's receipt of the complaint, those two days would be excluded and the time for delivery of the complaint to Mr. Inos would increase to seven calendar days. Com. R. Civ. P. 6(a) should not, however, govern the computation of days. Rather, the computation of days should be governed strictly by 1 CMC § 6423(d).

"An election contest is a special proceeding and, while tried as a civil action, is not governed by the Rules of Civil Procedure where they are inconsistent with the statutes pertaining to the procedure itself." *Franson*, 137 N.W.2d at 839. Com. R. Civ. P. 6(a) is inconsistent with the language and purpose of 1 CMC § 6423(d). Com. R. Civ. P. 6(a) allows parties before the court to skip intervening weekends and legal holidays. Application of the rule to election contests would defeat the election contest statute's shortened time periods. The

purpose of these reduced periods of time is to expedite election contests and dispose of them as soon as possible. It follows that when the legislature specifies that the Board must serve the defendants within five days, it means the shortest possible five days, or five consecutive days.[5] Because of the inconsistency between Com. R. Civ. P. 6(a) and 1 CMC § 6423(d), Com. R. Civ. P. 6(a) does not apply to actions brought pursuant to the election contest statute.

This strict application of our election statute may appear harsh or even unfair. For instance, it may seem unfair that the Board's failure to act penalizes the contestants. However, the legislature alone prescribes election contest proceedings. If the result of strict enforcement of the statute is undesirable, the legislature, not the court, may change the law. *Cf. In re Seman*, 3 N.M.I. 57, 75 (1992) ("The judiciary may not 'rewrite' [3 CMC] § 2513 to make it conform to constitutional guarantees. . . . [o]nly the legislature may do so") (footnote omitted); *King v. Board of Elections*, 2 N.M.I. 398, 406 (1991) ("We will not act as a super legislature and strike down a statute or regulation merely because it could have been better written").

### Interpretation of 1 CMC § 6424

One CMC § 6424 provides: "The court shall thereupon set a date for the election contest hearing not less than 15 days nor more than 20 days from the date of the filing of the complaint." The twenty-day limitation in this case expired on February 2, 1994. The trial court, however, in its January 29 order setting a hearing, "construed the statute as requiring it to fix the date for the hearing within the [twenty]-day period, but not to hold the hearing itself during that period." Based on that construction, the court set the election contest hearing for February 21, 1994.

In light of the overall intent of the election contest statute to expedite such proceedings, it makes sense that the hearing should be held not less than fifteen days nor more than twenty days from the filing of a complaint. There is no reason to require the court to wait for fifteen days simply to *set* the hearing. Likewise, it would be contrary to the purpose of the statute to require the court to set the hearing within twenty days, but not to hold the hearing within any particular period of time. That would

---

[5] *Cf. Anonymous Banks One through Three v. FDIC*, 645 F. Supp. 706 (D. Mont. 1986) (holding that application of Fed. R. Civ. P. 6(a) rather than the statutorily-prescribed ten-day period of limitation for challenging temporary cease and desist orders would be contrary to congressional intent).

defeat the overall purpose of providing for expedited proceedings.

The trial court's misinterpretation of 1 CMC § 6424 caused it to violate the statute in question by setting the election contest hearing far beyond the twenty-day limitation.[6] This violation could be held to have divested the court of any jurisdiction it had acquired.[7] However, since the trial court never acquired personal jurisdiction over the petitioners, it is unnecessary to determine what effect the violation of 1 CMC § 6424 had on the court's jurisdiction.

### Guidelines for Issuing a Writ

In *Commonwealth v. Superior Ct.*, 1 N.M.I. 287 (1990), we set forth the guidelines for determining whether to grant a writ of prohibition. They are set out in the majority's opinion.

In applying those guidelines, it appears that four out of the five apply to this case, and the scale tips heavily in favor of granting the writ.

First, the petitioners have no other adequate means, such as a direct appeal, to attain the relief desired, because the election statutes prohibit any appeal of the trial court's decision:

> After hearing the evidence and within three days after the submission thereof, the court shall issue its findings of fact and conclusions of law, and immediately thereafter announce judgment in the case, either confirming, or reversing the result of the election. The judgment of the court shall be *final and unappealable*.

1 CMC § 6425(c) (emphasis added).

Second, since no appeal may be taken to the Supreme Court from the decision of the trial court, the petitioners will be damaged or prejudiced in a way not correctable on appeal.

Third, as to the trial court's interpretation of 1 CMC § 6424, and the setting of the hearing on the election contest beyond twenty days after the filing of the complaint, the trial court's order is clearly erroneous.

---

[6] The court could have, and should have, set both the motion to dismiss and the election contest hearing on January 31, 1994, which would have been within the fifteen to twenty-day period.

[7] *See Perloff v. Edington*, 302 So. 2d 92 (Ala. 1974); *McCall v. Board of Educ.*, 175 N.E.2d 351 (Ohio 1959).

Fourth, this case raises new and important problems and issues of law of first impression. One issue of first impression here is whether the trial court had jurisdiction even though the defendants were not legally served with the complaint. The trial court's holding on this question is erroneous.

Based on the above analysis, the petition for writ of prohibition should be granted.